| SYMETRA LIFE INSURANCE COMPANY, | : UNITED STATES DISTRICT COURT |
|---|---|
| Plaintiff, | : DISTRICT OF NEW JERSEY |
| | : Civil Action No. 18-12350 (MAS)(ZNQ) |
| v. | : |
| JJK 2016 INSURANCE TRUST, | : MEMORANDUM OPINION AND |
| Defendant. | : ORDER |

This discovery dispute comes before the Court via a series of informal letters submitted by the parties. (*See* Pl.'s Sept. 13, 2019, Letter ("PL"), ECF 17; Def.'s Sept. 13, 2019, Letter ("DL"), ECF 18; Pl.'s Sept. 20, 2019, Resp. Letter ("PRL"), ECF 19; Def.'s Sept. 20, 2019, Resp. Letter ("DRL"), ECF 20.) Plaintiff Symetra Life Insurance Company ("Symetra") seeks the production of several emails, identified as JJK0001536, JJK0001539, JJK0001542, as well as emails identified on Defendant JJK 2016 Insurance Trust's ("the Trust") privilege log as documents 1, 2, 4, 6, 8, 10–15, and 34. (DL 1–2.) The Trust seeks the production of the redacted portion of a single email identified as SL 004016. (*Id.* at 5.) The Trust claims the emails in its possession are protected by attorney-client privilege. (*Id.* at 3.) Symetra claims its email is protected by attorney-client privilege and work product privilege. (PRL 4.) For the reasons detailed below, the Trust's claims of privilege are overruled, and Symetra's claim of privilege is sustained.

I. ALLEGATIONS

Symetra issued two insurance policies, insuring the life of Joseph Krivulka ("the Decedent"). (PL 1.) The Trust was named the beneficiary of both. (*Id.*) Symetra seeks to have the policies declared void *ab initio* due to alleged misrepresentations by the Decedent. (*Id.*) In particular, Symetra alleges the Decedent; John Kelley, an insurance broker; and Timothy Soule, Vice President of Operations and Human Resources at Akrimax Pharmaceuticals, LLC, a company

owned by the Decedent, knew the Decedent had scheduled a comprehensive medical examination for August 9, 2016, when he, in part, executed the life insurance application on August 5, 2016. (*Id.* at 1–2; *see also* DL 3 (identifying the parties to the communications).) The same day as the appointment, Symetra alleges the Decedent asked it to waive the signing of a statement of health without disclosing his appointment. (PL 2.) During the appointment, Symetra claims, the Decedent was "diagnosed with metastic lung disease." (*Id.*) Symetra further alleges that, before the delivery of the policies or the payment of the first modal premium, the Decedent was diagnosed with Hodgkin's Lymphoma. (*Id.*)

## II. ISSUE 1: SYMETRA SEEKS EMAILS BETWEEN THE DECEDENT'S EMPLOYEES AND HIS ATTORNEYS

### A. The Emails at Issue

Symetra is seeking to discover the following:

1. JJK0001536: Two emails, the first of which is from Soule to John Berger (an attorney for the Decedent), copying Lisa Shann ("an assistant at Akrimax"). (PL, Ex. A 1; *see also* DL 3 (identifying Shann).) The second is an email from Berger to Soule, copying Shann. (PL, Ex. A 1.)

2. JJK0001539: An email from Soule to Berger, copying Shann. (*Id.* at 2.)

3. JJK0001542: Three emails between Soule and Berger on which Shann is copied. (*Id.* at 3.)

4. Doc. 1: An email chain between Berger and Soule, copying Michael Lerner (attorney for the Decedent). (PL, Ex. E 2.)

5. Doc. 2: Email chain between Berger, Soule, and Lerner. (*Id.*)

6. Doc. 4: An email from Soule to Berger. (*Id.* at 3.)

7. Doc. 6: An email chain between Banacky (legal secretary), Berger, Lerner, Lori Amick (paralegal) and Soule. (*Id.*; *see also* DL 4 (identifying Amick)).

8. Doc. 8: An email from Soule to Lerner, copying the Decedent, Berger, and Keith Lavan (Akrimax's Vice President of Financial Operations). (PL, Ex. E 3; *see also* DL 3 (identifying Lavan).)

9. Doc. 10: An email from Lerner to Lavan, copying Soule and Berger. (PL, Ex. E 3.)

10. Doc. 11: Emails to Lavan from Berger, copying Soule and Lerner. (*Id.*)

11. Doc. 12: An email between Lerner and Soule, copying Lavan and Berger. (*Id.*)

12. Doc. 13: Emails between Soule and Lavan, copying Lerner and Berger. (*Id.*)

13. Doc. 14: An email chain between Lavan and Berger, copying Soule and Lerner. (*Id.*)

14. Doc. 15: Emails between Soule and Berger. (*Id.*)

15. Doc. 34: An email from Soule to Lerner. (*Id.* at 4.)

**B. Parties' Arguments**

The Trust argues the emails are shielded from discovery by attorney-client privilege, which extends to "the *necessary* intermediaries and agents through whom the communications are made." (DL 2–3 (quoting *Reddy's Labs., Ltd. v. Nordion, Inc.*, Civ. No. 09-2398, 2012 U.S. Dist. LEXIS 65589, at *10 (quoting in turn *Tractenberg v. Twp. of West Orange*, 416 N.J. Super. 354 (N.J. App. Div. 2010))).) The Trust contends "Soule acted on behalf of [the Decedent] and played a vital role in communicating with insurance brokers, Michael Costello and John Kelly, for the purpose of securing life insurance for [the Decedent]." (*Id.* at 3.) It contends Soule was the Decedent's right-hand man and that Soule was authorized to act on behalf of the Decedent and

> necessarily facilitated communications with [the Decedent] and counsel and directly communicated with [the Decedent]'s counsel to assist with [] legal representation regarding the drafting and execution of the [trust] documents, execution of the life insurance application in dispute, the life insurance commitment, and the funding payment of the life insurance policies.

(*Id.*) The Trust further argues that Lavan "was necessary for transmitting the funding payment for the policies," and Shann "was instrumental in assisting [the Decedent] and [] Soule as his agent in sending and receiving the necessary documents associated with executing the life insurance application." (*Id.*) Moreover, the Trust claims, "they were communicating agents of the [Decedent]" and "all the communications were intended to be confidential . . . ." (*Id.*)

3

Symetra claims Defendant failed to state a valid basis for the emails to be privileged and that there is no valid basis. (PL 2.) In particular, Symetra contends Soule, Shann, and Lavan do not constitute "necessary intermediaries" to whom the privilege may extend, (PRL 1 (citing *Dr. Reddy's Laboratories Limited v. Nordion, Inc.*, 2012 WL 1656732)), and that the communications at issue were not concerning legal advice and thus not protected, (PRL 2 (citing and discussing *Callco Partnership d/b/a Verizon Wireless v. Certain Underwriters at Lloyd's London*, 2006 WL 1320067, at *4 (D.N.J. 2006))).

### C. Attorney-Client Privilege

"[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. N.J.R.E. 504(1) provides "communications between a lawyer and his client in the course of that relationship and in professional confidence, are privileged . . . ." "Client" is defined by the rule as "a person or corporation or other association that, directly or through an authorized representative, consults a lawyer or the lawyer's representative for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity . . . ." N.J.R.E. 504(3). As the New Jersey Supreme Court has explained, "the [r]ule plainly state[s], the privilege covers only communications between a client and a lawyer, and the client's communications made through '"necessary intermediaries and agents."'" *Rawlings v. Police Dep't of Jersey City, N.J.*, 627 A.2d 602, 609 (N.J. 1993) (quoting *State v. Davis*, 116 N.J. 341, 361 (1989) (quoting, in turn, *State v. Kociolek*, 23 N.J. 400, 413 (1957))) (citing *Fellerman v. Bradley*, 99 N.J. 493, 499 (1985)) (internal citations omitted); *Dr. Reddy's Labs. Ltd.*, 2012 WL 1656732, at *3 ("[T]he New Jersey state courts have carved out a judicially-made exception to the general requirement that only direct communications between a

client and a lawyer are subject to the attorney-client privilege.").

> "[N]ecessary intermediaries" have been held to include a psychiatrist retained by defense counsel, [*Kociolek*, 23 N.J. at 413], arson experts hired by defense counsel, *State v. Melvins*, 155 N.J. Super. 316, 322–23 (App. Div. 1978), *certif. denied*, 87 N.J. 320 (1981), a handwriting expert employed by defense counsel, *State v. Mingo*, 77 N.J. 576, 584 (1978), and an engineering firm hired as a consultant for litigation assistance, *Conforti & Eisele, Inc. v. Division of Building & Construction*, 170 N.J. Super. 64, 69–70 (Law Div. 1979).

*Tractenberg*, 4 A.3d 585, 598–99 (N.J. App. Div. 2010); *see also Rawlings*, 627 A.2d at 609 (no privilege for communications with union representative); *In re Custodian of Records, Criminal Div. Manager*, 19 A.3d 1032, 1034–35 (N.J. App. Div. 2011) (financial documents submitted to the Public Defender in an application for counsel were privileged). "The attorney-client privilege is not restricted to legal advice, though '[t]he privilege is limited to those situations in which lawful legal advice is the object of the relationship.'" *Rivard v. Am. Home Prod., Inc.*, 917 A.2d 286, 300 (N.J. App. Div. 2007) (quoting *In re Gonnella*, 238 N.J. Super. 509, 512 (Law Div. 1989)).

"The purpose of the attorney-client privilege is '"to encourage clients to make full disclosure to their attorneys."'" *Paff v. Div. of Law*, 988 A.2d 1239, 1245 (N.J. App. Div. 2010) (quoting *Macey v. Rollins Envtl. Servs. (N.J.), Inc.*, 179 N.J. Super. 535, 539 (App. Div. 1981) (quoting, in turn, *Fisher v. United States*, 425 U.S. 391, 403 (1976))). "Despite the importance of the privilege, it should be construed strictly," *id.*, because of its "tendency to prevent the full disclosure of the truth," *id.* (quoting *In re Selser*, 15 N.J. 393, 405–06 (1954)).

The Third Restatement of the Law Governing Lawyers explains, the attorney-client privilege "normally applies to communications involving persons who on their own behalf seek legal assistance from a lawyer," but "a client . . . may appoint a third person to do so as the client's agent." Restatement (Third) of the Law Governing Lawyers § 70 cmt. e. (2000) (citing as an example Restatement (Third) of the Law Governing Lawyers § 134 cmt. f (lawyer designated by an insurer to represent an insured under a liability insurance policy)). According to the

Restatement, "[a] person is a confidential agent for communication if the person's participation is reasonably necessary to facilitate the client's communication with a lawyer or another privileged person and if the client reasonably believes that the person will hold the communication in confidence." *Id.* at cmt. f. The Restatement outlines factors that may be relevant to determining if someone is a confidential agent; those factors include "the customary relationship between the client and the asserted agent, the nature of the communication, and the client's need for the third person's presence to communicate effectively with the lawyer or to understand and act upon the lawyer's advice." *Id.* The Restatement also gives six illustrations of a confidential agent: (1) a friend acting as an intermediary between a client-prisoner and his lawyer where the police will not permit the client-prisoner to speak to his attorney directly, (2) a translator, (3) a secretary who the client regularly employs to record and transcribe business letters, (4) the parents of a minor client, (5) an accountant assisting the client in understanding a complex tax issue, and (6) the guardian of a mentally incapacitated client. *Id.*

### D. Analysis and Recommendation

The Trust's claim to privilege rests on the instrumental role Soule and the other employees of the Decedent's company played in facilitating communications between the Decedent and his attorneys. (*See* DL 3–4; DRL 2–3.) The problem with the Trust's argument is that the attorney-client privilege does not apply simply because the agent's role was significant, but where the agency relationship was "necessary." *See, e.g., Rawlings*, 627 A.2d at 609; *Dr. Reddy's Labs. Ltd.*, 2012 WL 1656732, at *3; Restatement (Third) of the Law Governing Lawyers § 70 cmt. e. The Trust explains how the Decedent used his employees, but fails to demonstrate why their involvement was *necessary* in facilitating the creation or funding of the trust. Importantly, the Decedent—not his company—was the client, and, although the Trust argues that Soule was the

Decedent's "righthand man," the Trust has not shown even under the Restatement's broad standard of "necessary" that Soule's involvement was akin to that of a secretary (i.e., someone who routinely facilitates the recordation or proper administration of an individual's affairs). Soule's involvement, like the other employees of the Decedent's company, seems to be of a different ilk—one of convenience rather than necessity. In the Court's view, the Trust asks it to read "necessary" so broadly as to eliminate it. The Court declines to do so.

Further, New Jersey's attorney-client privilege is to be strictly construed, *Paff*, 988 A.2d at 1245, and the purpose of attorney-client privilege will not be undermined by finding these documents are not protected: In effect, finding the emails not protected would only discourage the use of convenience intermediaries between a client and his or her lawyer—not full and frank discussion between the client and his lawyer.

For those reasons, the Court finds JJK0001536, JJK0001539, JJK0001542, and the documents identified as 1, 2, 4, 6, 8, 10–15, and 34 are not protected by attorney-client privilege and the Trust's claim of privilege is overruled.

### III. ISSUE 2: DEFENDANT SEEKS AN EMAIL BETWEEN TWO SYMETRA EMPLOYEES COPYING IN-HOUSE COUNSEL

#### A. The Email at Issue

The Trust seeks to discover an email on which Symetra's in-house counsel is copied. (PRL 4.) The email is from Rosie Gruber, Symetra's AVP in the claims department, to John Valickus, Symetra's Chief Underwriter, and the email is identified as SL 004016 on Symetra's privilege log. (DL 5.) The redacted email is part of a chain and, four days after it was sent, Gruber replied "[Valickus], Just want to make sure you saw this email." (DL, Ex. E 3.) Valickus responds

> Information reviewed. We were aware of the 3/16/16 kidney function studies. In fact, we had the insurance labs dated 3/10/16 (just 6 days before the APS kidney results), which were more favorable. Creatinine readings can fluctuate . . . . We averaged the 2 in coming up with a final rating. So in answer to the question,

one elevated creatinine reading should not be a defense for denial.
(*Id.*) The latter two emails are not privileged and counsel was not copied. (PRL 5.)

### B. Parties' Arguments

The Trust argues the email is relevant as to whether Symetra denied the insurance claim and on what basis. (DL 5.) The Trust contends simply copying counsel on the email does not cloak it in attorney-client privilege, (*id.* (citing *Supernus Pharms. v. TWI Pharms, Inc.*, Civ. No. 15-369, 2016 U.S. Dist. LEXIS 136551, at *5 (D.N.J. Jun. 21, 2016))), and that there is no indication that counsel was functioning as an attorney with respect to this communication, (*id.*). Further, the Trust argues, even if counsel directed the preparation of the email, that alone does not establish that it is privileged. (*Id.* (citing *Supernus Pharms.*, 2016 U.S. Dist. LEXIS 136551, at *5).) The Trust alleges that the email was soliciting a response from Valickus, highlighting that Gruber replied to the email without copying counsel to ensure Valickus saw it and that Valickus replied, also without copying counsel. (*Id.* at 5–6.) The Trust points to a case from the United States District Court for the District of Colorado, in which the Court found documents exchanged between in-house counsel and a claims adjuster were not protected by attorney-client privilege because in-house counsel was not functioning as an attorney (i.e., dispensing legal advice) in those communications. (DRL 3 (discussing *Olsen v. Owners Ins. Co.*, Civ. No. 18-cv-1665, 2019 U.S. Dist. LEXIS 101048, at *6 (D. Colo. Jun 17, 2019)).)

Moving to the work product privilege, The Trust submits the email was not prepared in reasonable anticipation of litigation and primarily for the purpose of litigation, and therefore is not sheltered. (DL 6–7 (citing *Travelers Prop. Cas. Co. of Am. v. USA Container Co.*, Civ. No. 09-cv-01612, 2012 U.S. Dist. LEXIS 196119, at *72 (D.N.J. Oct. 25, 2012)).) The Trust believes the email was prepared in the ordinary course of Symetra's business, specifically, reviewing a policy holder's claim. (*Id.* at 7.)

Symetra responds that attorney-client privilege extends to communications where counsel is copied to keep him "aware of the dispute," and to "position himself to offer legal advice and guidance on the subject." (PRL 4 (quoting *Sanchez v. Maquet Getinge Group*, 2018 WL 2324579 (App. Div. 2018)).) Symetra adds that, contrary to the Trust's argument, counsel was a party to the conversation and the privilege applies. (*Id.* at 5.)

As for the work product privilege, Symetra submits "it is clear that the document was prepared in anticipation of litigation and for the precise purpose of the institution of litigation given the substance of the communication and the timing of the same (*i.e.*, . . . the Complaint was filed only shortly thereafter on August 2, 2018 – 21 days after the communication was transmitted)." (*Id.*) Symetra contends Gruber was seeking input from Valickus in preparation for Symetra to bring this action and that counsel was copied so she would be kept apprised of the developments. (*Id.*) Symetra contends the communications between Valickus and Gruber where counsel was not copied were not privileged and production in no way waives privilege with respect to the communications involving counsel. (*Id.*) Symetra adds that no substantial need for the communications was shown. (*Id.*)

### C. Attorney-Client Privilege and Work Product Privilege

Again, N.J.R.E. 504(1) provides "communications between a lawyer and his client in the course of that relationship and in professional confidence, are privileged . . . ."

> In the case of a corporate client, privileged communications may be shared by non-attorney employees in order to relay information requested by attorneys. Moreover, "documents subject to the privilege may be transmitted between non-attorneys . . . so that the corporation may be properly informed of legal advice and act appropriately."

*Schwarz Pharma., Inc. v. Teva Pharm. USA, Inc.*, No. CIV A 01-4995 (DRD), 2007 WL 2892744, at *3 (D.N.J. Sept. 27, 2007) (quoting *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D.

9

467, 477 (E.D. Pa. 2005)); *see also Hedden v. Kean Univ.*, 434 N.J. Super. 1, 14 (App. Div. 2013) (collecting cases).

"Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3) . . . ." *United Coal Companies v. Powell Const. Co.*, 839 F.2d 958, 966 (3d Cir. 1988). Fed. R. Civ. P. 26(b)(3)(A) provides that,

> [o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1);
>
> and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

"Courts in this Circuit have adopted a 'two part test for ascertaining whether the documents (or things) at issue should be protected under the [work-product doctrine].'" *Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 306 (D.N.J. 2008) (quoting *In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 183 (D.N.J. 2003)) (alteration in original). The first question is whether the document was prepared in anticipation of litigation. *Maertin v. Armstrong World Indus., Inc.*, 172 F.R.D. 143, 148 (D.N.J. 1997). To make that determination "the relevant inquiry is 'whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *Id.* (quoting *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1258 (3d Cir. 1993)); *see, e.g., United States v. Ernstoff*, 183 F.R.D. 148, 156 (D.N.J. 1998) (finding documents related to racial discrimination data collected from random testing was not prepared in anticipation of litigation because the Department of Justice does not bring litigation every time it

conducts a random test). "The second inquiry is whether the documents were prepared primarily for the purpose of litigation." *Louisiana Mun. Police Employees Ret. Sys.*, 253 F.R.D. at 306–07 (quotation omitted); *see, e.g., id.* at 308–09 (finding documents met the second part of the test because the law firm was retained to give legal advice and the party seeking the documents did not even allege they were unrelated to the legal services). The party asserting the privilege bears the burden of demonstrating its applicability. *Conoco, Ins. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3d Cir. 1982).

### D. Analysis and Recommendation

After reviewing the email *in camera*, it is the Court's opinion that the email is privileged. It appears in-house counsel was, in fact, copied on the email to apprise him of certain aspects of the anticipated litigation. The email is explicitly and entirely about the anticipated action and concerns litigation strategy. Based on the content, the Court finds the attorney-client privilege applies. Moreover, and with respect to the work product privilege, it is clear from the content of the email that it was prepared in anticipation of litigation and with the primary purpose of preparing for the impending action. The Court thus agrees that the work product privilege also applies. Given the brevity of the email, its content, and the fact the Trust has the substantive response, the Court can see no overriding reason why the Trust would need to know the contents of the email. Symetra's claim of privilege is thus sustained.

### IV. CONCLUSION AND ORDER

The Court having considered both parties' contentions without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b), and for the reasons expressed above,

**IT IS on this 4th day of October, 2019**

**ORDERED** that the Trust's claim of attorney-client privilege as to the documents

identified as JJK0001536, JJK0001539, JJK0001542, and the documents identified on its privilege log as 1, 2, 4, 6, 8, 10–15, 34, is **OVERRULED**;

the Trust is hereby **ORDERED** to produce unredacted copies of said documents within thirty (30) days of the entry of this Order;

and it is further **ORDERED** that Symetra's claim of attorney-client and work product privilege as to the redacted email found on the document identified as SL 004016 is **SUSTAINED**.

ZAHID N. QURAISHI
United States Magistrate Judge