**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| SYMETRA LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>JJK 2016 INSURANCE TRUST,<br><br>Defendant. | Civil Action No. 18-12350 (MAS) (ZNQ)<br><br>**MEMORANDUM OPINION & ORDER** |

This matter comes before the Court upon Plaintiff Symetra Life Insurance Company's ("Symetra") Motion for Leave to File First Amended Complaint ("Motion"). (ECF No. 25.) Defendant JJK 2016 Insurance Trust ("the Trust") opposed, (ECF No. 32), and Symetra replied, (ECF No. 35). The Court has carefully considered the arguments and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Symetra's Motion is granted.

I.    **BACKGROUND**

On August 2, 2018, Symetra filed a Complaint, seeking to have two life insurance policies insuring the life of Joseph J. Krivulka ("the Decedent") rescinded and declared void *ab initio*. (Compl. ¶ 2, ECF No. 1.) The policies, worth a collective $25,000,000, named the Trust as both the policyholder and the beneficiary. (*Id.* ¶ 10, 15.) In its Complaint, Symetra alleged that following the Decedent's death it discovered he made "materially false" representations and statements in the application process. (*Id.* ¶¶ 24–25.) In particular, Symetra alleged that the Decedent "should have disclosed his treatment for lung and kidney cysts" and that he was scheduled for a comprehensive medical evaluation at Princeton Longevity Center. (*Id.* ¶¶ 27–28.)

Symetra alleges that, "[d]espite all of the testing and treatment, consultations and diagnoses occurring prior to the effective date or payment of the first modal premium" none of the pertinent information was provided to it. (*Id.* ¶ 33.)

Following the initial conference, the Court entered a Pretrial Scheduling Order, setting the deadlines to amend the pleadings as April 1, 2019, and the deadline for fact discovery as June 3, 2019. (Pretrial Scheduling Order ¶¶ 8–9, ECF No. 9.) On August 14, 2019, the Court entered an Amended Pretrial Scheduling Order extending fact discovery through October 18, 2019. (Am. Pretrial Scheduling Order ¶ 1, ECF No. 15.) By the end of September 2019, the parties had reached an impasse over the discoverability of several emails. (Mem. Op. and Order 1, ECF No. 21.) The Court ordered the Trust to comply with the majority of Symetra's discovery requests, finding most of the emails were not privileged. (*Id.* at 6–7, 11–12.) The documents were produced on October 18, 2019. (Moving Br. 3, ECF No. 25-2.)

On November 22, 2019, Symetra filed the instant Motion. (Notice of Mot. 2, ECF No. 25.) Symetra seeks to amend its Complaint and add three new defendants, Michael Lerner ("Lerner"), John Kelley ("Kelley"), and Patriot Benefit Solutions Insurance Agency ("Patriot"). (Redlined Proposed Am. Compl. 1, ECF No. 25-3 (caption).) It also seeks to add three new counts (Counts Six, Seven, and Eight). (*Id.* at 25, 28–29 (count headings).) Count Six asserts "the Decedent, Lerner on behalf of the Trust and Kelley knowingly made written and/or oral statements intended to be presented for the purpose of obtaining policies of life insurance knowing that the statements contained false and misleading information material to the Applications and Life Policies within the meaning and intent of the New Jersey Fraud Prevention Act . . . ." (*Id.* ¶ 106.) Counts Seven and Eight are both claims seeking recovery of commissions paid to Kelley and Patriot in connection with the two policies, the former being a contract action, and the latter an unjust

enrichment action. (*Id.* ¶¶ 114–119, 121.) Symetra claims that it learned for the first time during discovery: (1) that the insurance broker, Kelley, knew of the Decedent's prescheduled appointment with Princeton Longevity Center and that he urged Michael Costello to ask Symetra to waive a Supplemental Application Health Statement, (Moving Br. 1, 5–7); and (2) that Lerner, the trustee, knew that the Decedent was diagnosed with Hodgkin's Lymphoma before the delivery of the first modal premium and failed to disclose that change in health, (*id.* at 11–12). Symetra contends Kelley and Lerner's omissions and misrepresentations fall within the ambit of New Jersey's Insurance Fraud Prevention Act ("the IFPA"), N.J. Stat. Ann. § 17:33A-4. (*Id.* at 15.)

The Trust makes four arguments in response: (1) Symetra's attorney's certification filed in support of its Motion should be stricken because it states contested issues as fact, (The Trust's Redacted Br. in Opp'n to Mot. 21–22, ECF No. 32); (2) Symetra lacks good cause to amend under Federal Rule of Civil Procedure ("Rule") 16 because it knew in March 2018 that Kelley was aware of the scheduled evaluation and because it knew in September that Lerner recommended not updating the application, (*id.* at 24–25); (3) there is no excuse for the delay, which will be prejudicial and require discovery to be reopened, (*id.* at 26–27); and (4) Symetra's claim under the IFPA lacks support because there is no evidence anyone misled Symetra, (*id.* at 28–29.) The Trust charts a timeline, in pertinent part, highlighting that Symetra's Assistant Vice President of Claims, Rosie Gruber ("Gruber"), spoke with Kelley on March 8, 2018, and that Kelley acknowledged he was aware of the Decedent's scheduled evaluation when he requested the waiver of the supplemental health statement. (*Id.* at 16 (citing Killian Decl. Ex. 1, Gruber Dep., at 28:15–25, ECF No. 32-2).) The Trust further notes that in January 2019, Symetra identified Kelley and Lerner as witnesses with knowledge of the application, (*id.* at 17 (citing generally Killian Decl. Ex. 24, Symetra's Mandatory Disclosure Statement, ECF No. 32-3)), and that on August 13, 2019,

Symetra deposed Lerner and asked him numerous questions about the application and alleged misrepresentations, (*id.* at 18 (citing generally Killian Decl. Ex. 15, Lerner Dep., ECF No. 32-3)).

In its response, Symetra insists that it was unaware of Kelley and Lerner's role, adding that any delay is attributable to the Trust's improper assertion of privilege over emails evincing their roles in the application process. (Symetra's Reply 6–7, ECF No. 35.) With respect to the IFPA, Symetra asserts Kelley and Lerner owed a continuing common law duty to disclose material changes in condition, (*id.* at 13 (citing *Weir v. City Title Ins. Co.*, 125 N.J. Super. 23, 29 (App. Div. 1973)), and that the waiver of the Supplemental Application Health Statement did not extinguish that duty, (*id.* at 14).

## II.   DISCUSSION

### A.   Local Civil Rule 7.2(a)

Local Civil Rule 7.2(a) restricts the contents of certifications "to statements of fact within the personal knowledge of the signatory." "Legal arguments and summations in such documents will be disregarded by the Court and may subject the signatory to appropriate censure, sanctions or both." L. Civ. R. 7.2(a); *see also Bordeaux v. LTD Fin. Sys., LP*, No. 16-243, 2017 WL 4613198, at *2 (D.N.J. Oct. 16, 2017).

The Trust argues Symetra's counsel's certification in support of its Motion "is laden with improper arguments and statements about" the Decedent's alleged misstatements and omissions. (The Trust's Redacted Br. in Opp'n to Mot. 18–19.) It asserts the certification is demonstrably false because Gruber knew on March 8, 2018, that Kelley had been aware of the Decedent's scheduled evaluation. (*Id.* at 19–20.) The Trust asks the Court to sanction Symetra and strike the certification and deny Symetra's Motion. (*Id.* at 21–22.)

The Court agrees that Symetra's attorney's certification contains some improper arguments of fact and conclusions. The Court finds it sufficient to disregard such statements, which have

minimal bearing on this case. The Court will not strike the certification entirely or deny the Motion on this basis.

**B.      Rule 15(a)(2) and 16(b)(4)**

Rule 15(a)(2) authorizes a party to amend its pleadings "only with the opposing party's written consent or the court's leave." Rule 15(a)(2) further instructs that "[t]he court should freely give leave when justice so requires." Though within the discretion of the Court,

> [i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

"[P]rejudice to the non-moving party is the touchstone for the denial of an amendment." *Phillips v. Borough of Keyport*, 179 F.R.D. 140, 144 (D.N.J. 1998) (quoting *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir.1978)) (alteration in original). "[D]elay alone does not justify denying a motion to amend." *Allegheny Plant Servs., Inc. v. Carolina Cas. Ins. Co.*, No. 14-4265, 2017 WL 772905, at *4 (D.N.J. Feb. 27, 2017). "[T]he non-moving party must establish that the amendment 'unfairly disadvantage[s] or deprive[s] [it] of the opportunity to present facts or evidence which it would have offered had the amendments been timely.'" *Phillips*, 179 F.R.D. at 144 (quoting *Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir.1981)) (second, third, and fourth alteration in original). "The prejudice to the opposing party is greater where the tardy amendment will require a reopening of discovery, and it is lessened when the new issue presents solely an issue of law to be determined upon application to the existing facts." *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 469 (D.N.J. 1990). "[I]ncidental prejudice to the opponent is not

a sufficient basis for denial of an amendment; such prejudice becomes 'undue' when the opponent shows it would be 'unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered . . . .'" *Id.* at 468 (quoting *Heyl & Patterson Int'l, Inc.*, 663 F.2d at 426) (omission in original). "A court may seek to mitigate the potential prejudice to the non-moving party by granting the amendment but limiting the permissible scope of future discovery." *Capital Health Sys., Inc. v. Veznedaroglu*, No. 15-8288, 2019 WL 6324006, at *6 (D.N.J. Nov. 26, 2019).

Where the deadline to amend the pleadings as set by the Pretrial Scheduling Order has passed, the party seeking to amend must satisfy Rule 16(b)(4)'s "good cause" standard. *Dimensional Commc'ns, Inc. v. OZ Optics, Ltd.*, 148 F. App'x 82, 84 (3d Cir. 2005); *E. Minerals & Chemicals Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000). "Good cause depends on the diligence of the moving party." *Capital Health Sys., Inc.*, 2019 WL 6324006, at *5. "A court must determine whether the movant possessed, or through diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline's expiration." *Id.* "A Magistrate Judge has the discretion to decide what kind of showing the moving party must make to satisfy Rule 16(b)(4)'s good cause requirement." *Id.* Because the good cause standard is a higher standard than that established by Rule 15(a)(2), the Court begins with Rule 16(b)(4).

Symetra contends that it should be permitted to amend its Complaint because it learned through discovery "that Kelley knew about [the] Decedent's August 9, 2016 appointment at Princeton Longevity Center when he sought the waiver of the Supplemental Health Statement form and that he counseled [the] Decedent and Tim Soule to obtain . . . life insurance from Symetra

based upon the negative results of the exam . . . ."[1] (Moving Br. 13–14.) Symetra also claims "discovery revealed that [Lerner] received a copy of Kelley's September 8, 2016 email to [the] Decedent and Soule stating, 'You can absolutely put the life insurance policies in place without any additional health disclosures,'" and an email from Soule to Lerner asking whether Kelley's opinion "holds water given [the Decedent's] 'change in condition.'" (*Id.* at 14.)

The Trust points out that Symetra does not cite Rule 16, and contends that mistake is sufficient to deny the Motion. (The Trust's Redacted Br. in Opp'n to Mot. 22–23.) Addressing the substance of Symetra's argument, the Trust argues "the relevant timeline . . . demonstrates that Symetra's motion is disingenuous and lacks good cause," because "[b]y March 8, 2018 at the latest, Symetra knew about [the Decedent's] [appointment], and also knew that when Kelley asked Symetra Agent [Michael] Costello for a routine waiver of further health underwriting." (*Id.* at 24 (citing Killian Decl. Ex. 1, Gruber Dep., at 28:15).) The Trust submits that Symetra had a September 8, 2016, email by Kelley on June 26, 2019, that stated the insurance policies could be obtained without further medical disclosures because Symetra waived them. (*Id.* at 24 (citing Killian Decl. Ex. 3, Aug. 9, 2016, Email from Kelley to Soule, ECF No. 32-2).) The Trust also points to deposition testimony of Lerner where he states he did not recommend Kelley or Soule update the application for insurance and that "Symetra had waived any obligation to update the insurance," by waiving the supplemental health statement. (*Id.* at 25; Killian Decl. Ex. 15, Lerner Dep., at 39:8–40:9, ECF No. 32-3.) The Trust contends there is no plausible explanation why Symetra sat on this evidence until the expiration of discovery and submits the delay is undue. (The Trust's Redacted Br. in Opp'n to Mot. 25–27.) The Trust asserts the delay is prejudicial both to it

---

[1] Tim Soule ("Soule") was an employee of the Decedent's company, (Pl.'s Sept. 13, 2019, Letter 1, ECF No. 17), and aided the Decedent in acquiring the life insurance policies, (*see* Def.'s Sept. 13, 2019, Letter 3, ECF No. 18.)

and the Court, requiring the reopening of discovery and likely the redeposition of witnesses. (*Id.* at 27.)

Symetra insists that it did not know Kelley knew about the prescheduled exam when he requested the waiver, or that Lerner knew of the change in health before payment of the first modal premiums. (Symetra's Reply 8.) It contends that the delay was caused by the Trust's failure to produce the documents that now form the basis of the amendments and submits the Trust's delay constitutes good cause. (*Id.* at 10.)

The Court has reviewed the evidence cited by the Trust and finds any delay by Symetra excusable and that there is good cause to allow Symetra to amend its Complaint. In her deposition, Gruber stated that on March 18, 2018, she spoke to Kelley about the claims process and he said, "[W]e were really trying to get the application in force before [the Decedent] went for his annual physical." (Killian Decl. Ex. 1, Gruber Dep., at 28:15–25.) While that statement does suggest Kelley may have known about the appointment, it is not the smoking gun the Trust paints it to be, because it is the evidence that Kelley knew of the Decedent's change in health and knew about it before the delivery of the two policies and payment of the first modal premium that Symetra asserts is critical. (*See* Moving Br. 13–14.) The key evidence upon which Symetra seeks amendment is not Kelley's knowledge of the prescheduled visit, but that Kelley knew about the outcome of that visit and still advised the Decedent that the life insurance policies could be put in place without any additional disclosures. (*See id.* at 9, 14.) The claims questionnaire Kelley filled out, in which he acknowledged he learned "around September 8th, 2016 that something was discovered during [the Decedent's] visit," (Killian Decl. Ex. 22, Kelley's Claims Questionnaire, at 3, ECF No. 32-3), still does not show Kelley knew of the gravity of the results at the time when he advised against

8

further disclosures. It is reasonable that Symetra waited for a more concrete picture of the circumstances surrounding the application before levying fraud claims against Kelley.

As for Lerner, the Trust has not demonstrated that Symetra had evidence before commencing this action that Lerner knew of the Decedent's condition when he recommended not disclosing the Decedent's change in health before paying the modal premium. The Trust points to other evidence produced during discovery, (*see* The Trust's Redacted Br. in Opp'n to Mot. 24–25), that showed Lerner and Kelley believed Symetra had waived additional disclosures, but those documents do not directly show Lerner knew of the Decedent's change in condition before payment of the modal premium as the emails do.

Further, the Trust argues Symetra had an email from Kelley in late June 2019 that showed he believed Symetra waived any additional health disclosures. (*Id.* at 24.) That email does not show Kelley knew of the Decedent's change in health, but, even if Symetra could have amended at that point, the Trust admits the delay would be about six months. (*See id.*) While not ideal, that is not a significant enough delay in the Court's view of the circumstances to make it unreasonable for Symetra to have waited for more concrete evidence. Accordingly, the Court finds good cause to allow Symetra to amend its Complaint.

Turning to Rule 15(a)(2), the Court finds no undue delay or dilatory motive. As previously stated, even if it was possible for Symetra to amend earlier—which the Court does not agree with—the Court finds it reasonable that Symetra waited until it discovered the emails suggesting Kelley and Lerner were actively participating in the alleged deception before bringing new claims against them. Moreover, while allowing amendment at this stage may require discovery to be reopened, the Trust does not contend it will be unfairly disadvantaged. "Incidental prejudice" is not enough

9

to justify denying an amendment. *Harrison Beverage Co.*, 133 F.R.D. at 468. As the Rule instructs, the Court will freely grant leave to amend in this case.

### C.    Symetra's Fraud Claims

The Trust contends "N.J. Stat. Ann. § 17:33A-4(a)(3) is addressed to *the claim process*, and prohibits concealment of 'the occurrence of an event which affects any person's initial or continued right or entitlement to (a) any insurance benefit or payment, or (b) the amount of any benefit or payment to which the person is entitled.'" (The Trust's Redacted Br. in Opp'n to Mot. 28 (quoting N.J. Stat. Ann. § 17:33A-4(a)(3)).) The Trust submits there is no evidence of deception in the claim process, and that Gruber conceded Kelley was forthright and helpful in obtaining information about the Decedent's scheduled visit at Princeton Longevity Center. (*Id.* at 28–29.) The Trust submits that only N.J. Stat. Ann. § 17:33A-4(a)(4) relates to the underwriting process and is limited to false and misleading information. (*Id.* at 29.)

Symetra replies that "[t]he Fraud Act pertains to both claims and statements made [that are] 'intended to be presented to any insurance company or producer for the purpose of obtaining . . . an insurance policy." (Symetra's Reply 13 (quoting N.J. Stat. Ann. § 17:33A-4).) Symetra submits the IFPA is violated when someone "[c]onceals or knowingly fails to disclose any evidence, written or oral, which may be relevant to a finding that a violation of the provision of paragraph (4) of this subsection A. has or has not occurred." (*Id.* (quoting N.J. Stat. Ann. § 17:33A-4(a)(5)).) It contends "[a]n insured is obligated to disclose events that occur between the submission of an application and the effective date of the policy which causes information contained in the Application to be untrue." (*Id.* (citing *Fid. & Deposit Co. of Maryland v. Hudson United Bank*, 653 F.2d 766, 772 (3d Cir. 1981).)

"An amendment is futile if it 'is frivolous or advances a claim or defense that is legally insufficient on its face.'" *Robert v. Autopart Int'l*, No. 14-7266, 2016 WL 492762, at *3 (D.N.J.

10

Feb. 8, 2016) (quoting *Harrison Beverage Co. v. Dribeck Imp., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990)). "To evaluate futility, the Court uses 'the same standard of legal sufficiency' as applied to a motion to dismiss under Rule 12(b)(6)." *Id.* (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)). "While a pleading does not need to contain 'detailed factual allegations,' a party's 'obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not' suffice." *Dawn Rest., Inc. v. Penn Millers Ins. Co.*, No. 10-2273, 2011 WL 4962451, at *5 (D.N.J. Oct. 18, 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (citation omitted). "In determining futility, the Court considers only the pleading, exhibits attached to the pleading, matters of public record, and undisputedly authentic documents if the party's claims are based upon same." *Robert*, 2016 WL 492762, at *3.

In relevant part, the IFPA provides:

> a. A person or a practitioner violates this act if he:
>
> . . .
>
> > (3) Conceals or knowingly fails to disclose the occurrence of an event which affects any person's initial or continued right or entitlement to (a) any insurance benefit or payment or (b) the amount of any benefit or payment to which the person is entitled;
> >
> > (4) Prepares or makes any written or oral statement, intended to be presented to any insurance company or producer for the purpose of obtaining:
> >
> > . . .
> >
> > > (b) an insurance policy, knowing that the statement contains any false or misleading information

concerning any fact or thing material to an insurance
application or contract;

(5) Conceals or knowingly fails to disclose any evidence,
written or oral, which may be relevant to a finding that a
violation of the provisions of paragraph (4) of this subsection
a. has or has not occurred; . . . .

b. A person or practitioner violates this act if he knowingly assists,
conspires with, or urges any person or practitioner to violate any of
the provisions of this act.

N.J. Stat. Ann. § 17:33A-4(a)(3)–(5), (b). N.J. Stat. Ann. § 17:33A-4(a)(4)(b) ("subsection 4(b)")

explicitly declares it unlawful to prepare or make a written or oral statement for the purpose of

obtaining an insurance policy, where the maker or preparer knows the statement contains any false

or misleading information about something material to the application or contract. N.J. Stat. Ann.

§ 17:33A-4(a)(5) ("subsection (5)") further makes it unlawful for someone to knowingly fail to

disclose any evidence of a violation of the IFPA under subsection (4). *See also* Statement to

Assembly No. 450 (June 22, 1995) ("a person would violate the fraud law if he . . . conceals or

knowingly fails to disclose any evidence, written or oral, which may be relevant to proving that

such a violation of the law has or has not occurred.").

The question for the Court then is whether the facts alleged in the Proposed Amended

Complaint allow the Court to draw a reasonable inference that Kelley and Lerner are liable if their

alleged misconduct is proven. In its Complaint, Symetra alleges the Decedent falsely answered

medical history questions on its applications. (Redlined Proposed Am. Compl. ¶¶ 25, 33–34.) In

its Proposed Amended Complaint, it adds allegations that Kelley and Lerner knew of the

prescheduled appointment at the Princeton Longevity Center and "made misrepresentations of

facts, concealed and/or failed, refused or omitted to disclose any information to Symetra . . . ." (*Id.*

¶¶ 37–38.) In particular, Symetra alleges the Decedent, Kelley, and "possibly" Lerner "knowingly

and intentionally made misrepresentations of a (sic) facts and failed, refused and omitted to

12

disclose material facts which included" numerous tests the Decedent underwent at Princeton Longevity Center, that the results of a CT scan were compared to a 2015 scan and the impression was "[p]rogression of metastic lung disease," and that the Decedent was recommended for lung biopsies. (*Id.* ¶ 48.) Symetra claims the express language in the policies entitled it to that information, at least, before the delivery of the first modal premium. (*Id.* ¶¶ 61–62.) Symetra claims the Decedent, Kelley, and Lerner "conspired" to "conceal" the Decedent's medical treatments. (*Id.* ¶¶ 58–61.) Symetra also alleges Kelley "was not complete and true to the best of his knowledge and belief" in the agent's statement during the claims process when he denied any medical history or condition regarding the applicant's insurability was disclosed to him after submission of the policy but before the policy delivery. (*Id.* ¶¶ 71–72.)

Regardless of whether Symetra can ultimately prove an IFPA claim, the Court finds at this stage that the allegations are sufficient to allow amendment. Symetra directly alleges Kelley was untruthful when he filled out the agent's statement, (*id.*), which could violate N.J. Stat. Ann. § 17:33A-4(a)(3). Symetra also alleges Kelley and Lerner knew of and conspired to conceal the Princeton Longevity Center visit and results thereof which referred to the Decedent's prior medical history. (*Id.* ¶ 48.) If Kelley or Lerner knew the Decedent was untruthful on the applications and failed to disclose that to Symetra, or actively participated in the Decedent's alleged misconduct, it could demonstrate a violation of N.J. Stat. Ann. § 17:33A-4(a)(4) or (b).

III. **CONCLUSION AND ORDER**

For the reasons stated above, and other good cause shown,

**IT IS** on this 18th day of February, 2020 **ORDERED** that:

1. Symetra's Motion for Leave to File First Amended Complaint (ECF No. 25) is **GRANTED**.

2. Symetra may file its Amended Complaint within seven (7) days of the entry of this

   Order.

                                        ZAHID N. QURAISHI
                                        UNITED STATES MAGISTRATE JUDGE