**McELROY, DEUTSCH, MULVANEY
& CARPENTER, LLP**
1300 Mt. Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962
(973) 993-8100
Attorneys for Plaintiff,
Symetra Life Insurance Company

| | |
|---|---|
| **SYMETRA LIFE INSURANCE COMPANY,**<br><br>**Plaintiff,**<br><br>v.<br><br>**JJK 2016 INSURANCE TRUST, MICHAEL LERNER, AS TRUSTEE OF THE JJK 2016 INSURANCE TRUST, JOHN KELLEY, AND PATRIOT BENEFIT SOLUTIONS INSURANCE AGENCY,**<br><br>**Defendants.** | **UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY**<br><br>**Civil Action No.: 18-CV-12350 (MAS)(ZNQ)** |

## CIVIL ACTION – AMENDED COMPLAINT ON BEHALF OF SYMETRA LIFE INSURANCE COMPANY

Symetra Life Insurance Company ("Symetra"), by and through its attorneys, McElroy, Deutsch, Mulvaney & Carpenter, LLP, by way of Complaint against the defendants, the JJK 2016 Insurance Trust (the "Trust"), Michael Lerner (the "Trustee" or "Lerner") as Trustee of the Trust, John Kelley ("Kelley") and Patriot Benefit Solutions Insurance Agency ("Patriot") alleges and says:

### INTRODUCTION

1.  At all relevant times, Symetra is an insurance company organized and existing under the laws of the State of Washington, with its principal place of business located at 777

108th Avenue NE, Suite 1200, Bellevue, Washington 98004-5135.

2.      Symetra brings this action against the Trust to have two policies of life insurance, insuring the life of Joseph J. Krivulka, deceased (the "Decedent"), declared null and void and rescinded, *ab initio*, because the Decedent and the Trustee knowingly and intentionally made material misstatements and omissions in applying for the policies.

3.      Symetra also brings this action against the Trust, the Trustee and Kelley under the New Jersey Insurance Fraud Prevention Act (the "Act"), N.J.S.A. 17:33A-1, *et. seq.* to recover compensatory, consequential and treble damages, including attorneys' fees and costs because the Decedent, the Trust, the Trustee and Kelley engaged in a pattern of insurance fraud and failed to disclose material information in violation of the Act.

4.      Symetra also brings this action against Kelley and Patriot seeking reimbursement of commissions paid to Kelley in accordance with the Sales Agreement entered into by Symetra and Kelley, as Managing Director of Patriot.  In addition, Symetra seeks relief against Kelley and Patriot they would be unjustly enriched if permitted to retain the commissions received on rescinded policies.

## THE PARTIES

5.      Symetra is, and during all times relevant has been, in the business of underwriting policies of life insurance and is authorized to transact the business of insurance in the State of New Jersey.

6.      The Trust was established through the execution of a Trust Agreement on August 4, 2016, by and between the Decedent, as Grantor, who maintained a residence and domicile at 3 Bucks Mill Lane, Holmdel, New Jersey 07733 and Michael J. Lerner, as the Trustee.

7.      Lerner, the Trustee, was Decedent's attorney and he  maintains a business address

2

at Lowenstein Sandler LLP, One Lowenstein Drive, Roseland, New Jersey 07068. The Trust is a resident of and domiciled in, the State of New Jersey.

8.       Kelley is a licensed insurance producer, and during all relevant times, was familiar and knowledgeable with the underwriting process including the application for, and delivery of, life insurance policies. Kelley is a resident of and domiciled in the Commonwealth of Massachusetts. He is licensed to sell life insurance products in the State of New Jersey and sold the life insurance policies at issue in this matter in New Jersey to a New Jersey Trust.

9.       Patriot is a Single Member LLC that maintains its principal place of business at 17 Cobblestone Circle, North Andover, Massachusetts 01845.

**JURISDICTION AND VENUE**

10.      This Court possesses subject matter jurisdiction based upon diversity of citizenship of the within parties pursuant to 28 U.S.C. § 1332.

11.      Symetra is a citizen of the State of Washington within the meaning and intent of 28 U.S.C. § 1332.

12.      The Trust is a citizen of the State of New Jersey within the meaning and intent of 28 U.S.C. § 1332.

13.      Kelley is a citizen of the Commonwealth of Massachusetts within the meaning and intent of 28 U.S.C. § 1332.

14.      Patriot is a citizen of the Commonwealth of Massachusetts within the meaning and intent of 28 U.S.C. § 1332.

15.      There is complete diversity of citizenship between the parties to this action pursuant to 28 U.S.C. § 1332 and the amount in controversy exceeds $75,000.00, exclusive of interest and costs of suit.

16.     Venue in the United States District Court for the District of New Jersey is proper, because the acts giving rise to the controversy took place in New Jersey within the meaning and intent of 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

### Application for and Issuance of the Policies of Life Insurance

17.     On July 22, 2016 and August 5, 2016 the Decedent, as the named insured, and Lerner as Trustee, as the proposed owner, executed two Individual Life Insurance Applications, Part I and Financial Information Supplements to Part I Applications seeking the issuance of two flexible premium adjustable life insurance policies, bearing policy nos. AA6114869 and AA6120468 (collectively, the "Life Policies").   On July 22, 2016 and August 5, 2016, the Decedent executed two Individual Life Insurance Applications Part II seeking the issuance of the Life Policies.   On July 22, 2016, Lerner, as Trustee, executed Trust Certifications seeking the issuance of the Life Policies (hereinafter referred to collectively as the "Applications").   The Applications are fully incorporated by reference as if same were set forth at length herein.   The Trust is named as both the owner and beneficiary in the Applications.

18.     In executing the Applications, the Decedent, Trust, and Trustee knew that they were required to provide complete, truthful, accurate and honest answers to the questions present on the Applications, including medical history, physical condition, diagnosis, prognosis and treatment.

19.     In executing the Applications, the Decedent, Trust and Trustee knew that Symetra would rely upon the answers recorded thereon in determining whether the Decedent was insurable and otherwise qualified for the Life Policies applied for by the Decedent, Trust and Lerner, as Trustee.

4

20.      In executing the Applications, the Decedent, Trust and Trustee knew that they may be subject to civil and criminal penalties in the event they knowingly made any false or misleading statements in order to obtain the Life Policies.

21.      In executing the Applications, the Decedent, Trust and Trustee knew they were required to notify Symetra of any material change in Decedent's health and insurability during the underwriting of the Life Policies and prior to the issuance and delivery of the Life Policies and the payment of the first modal premium.

22.      In executing the Applications, the Decedent, Trust and Trustee  applied for two flexible premium adjustable life insurance policies containing a face amount death benefit of $15,000,000 and $10,000,000, respectively.

23.      In completing and executing Part I of the Applications on July 22, 2016, Decedent, Trust and Trustee  specifically represented, acknowledged and agreed:

> I (We) agree that all statements and answers recorded on this application are true and complete to the best of my/our knowledge and belief and shall form a part of any policy issued.  I have also read the Temporary Life Insurance Agreement. (Maximum Temporary Insurance Coverage is $250,000).
>
> **Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.**

24.      In completing and executing Part II of the Applications on July 22, 2016 and August 5, 2016, Decedent specifically represented, acknowledged and agreed:

> I represent that the statements and answers given in the application are true, complete and correctly recorded to the best of my knowledge and belief and shall form a part of any policy issued.  I agree that:  (1)  I will notify the Insurer if any statement or answer given in the Application changes prior to policy delivery; and (2)  except as provided in the Temporary Insurance Application and Agreement, if any, insurance will not begin unless all persons proposed for insurance are living and insurable as set forth in the application at the time a policy is delivered to the Owner and the first modal premium is paid.

**FRAUD NOTICE**:  Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.

25.     In completing and executing the Applications Part II, Medical History, seeking the issuance of the Life Policies, Decedent provided the following answers to the questions contained therein:

1.     PROPOSED INSURED INFORMATION

*   *   *

Doctor Name:  <u>Dr. Marc Sandberg</u>

*   *   *

3.     MEDICAL QUESTIONS

Give complete details of all "yes" answers in the DETAILS section. Please identify question number and include diagnosis, dates, duration, treatments and medications prescribed and names/addresses of all physicians and hospitals.  If you need additional room, please attach on a separate piece of paper.

**(a)  Within the past 10 years have you ever been treated, or been advised to be treated, by a member of the medical profession for:**

iv)  Cancer, lymphoma, leukemia, melanoma, cysts or tumor of any kind, malignant or benign?          <u>No</u>

*   *   *

ix)  Disease or disorder of the prostate, testicle, breast, cervix, uterus, kidney or urinary bladder?          <u>Yes</u>

*   *   *

**(b)  Within the past 5 years have you had:**

i)   any surgery or admission to health care facility for treatment or observation for any illness, disease or accident?          <u>No</u>

6

ii)  Any additional testing such as EKG's, laboratory testing (excluding testing for the AIDS virus) or x-rays whether as an inpatient or outpatient?      <u>Yes</u>

\* \* \*

**(e)  Within the last 24 months, have you:**

ii)  Consulted, or been examined or treated by any physician, chiropractor, psychologist or other health care practioner or by any hospital, clinic, or other health care facility not already disclosed on this application?  (If it was for a "check up", annual physical, employment physical, etc., so state and give findings and results.)      <u>No</u>

\* \* \*

**DETAILS**:  For any additional details and "yes" answers to the questions in section 2 and 3, please provide details here:

A  i)  Hypertension
A  ii)  Diabetes
A  iii)  Bells Palsy
A  iv)  B.P.H  Enlarged Prostate
B  ii)  Labwork for Diabetes

26.     On the basis of the statements and representations contained in the Applications, and in reliance upon Decedent's, the Trust's and Trustee's complete answers, candor, honesty and openness in disclosing information in response to the questions presented on the Applications, Symetra issued two flexible premium adjustable life insurance policies bearing policy no. AA6120468 with a face amount of $10,000,000 rated Table C and policy no. AA6114869 with a face amount of $15,000,000 rated Table D.  Both policies of insurance had an original issue date of August 9, 2016, and were subject to the delivery requirements and payment of the first modal premium.

27.     The Life Policies were later reissued based upon the Trustee's request that the premium mode be changed from annually to quarterly.

28.     By letter dated September 20, 2016, Lerner, on behalf of the Trust, mailed, and Symetra received on September 21, 2016, the first modal premium required with the new illustration based upon the quarterly billing mode rather than in the originally illustrated manual mode.

29.     On November 2, 2016, Symetra received a request from Kelley and agreed to issue the Life Policies with an effective date of September 21, 2016.

30.     Both Life Policies expressly set forth the following provisions:

**2.  GENERAL PROVISIONS**

**2.1  The Entire Contract**

This Policy is Our contract with You. We issue this Policy in consideration of Your Application and payment of the Initial Premium.

The entire contract is made up of this Policy, attached copies of the Application(s), including an questionnaires for issuance or reinstatement of the Policy, and attached copies of all coverage descriptions, endorsements, amendments, riders, and Policy change forms.

*   *   *

**2.2  Change of Contract**

Only our President, Secretary, Vice President or Assistant Secretary to modify this Policy or waive any of Our rights or requirements under it.   The person making these changes must put them in writing and sign them.

**2.3  Coverage Effectiveness**

Coverage will take effect and be in force on the later of the Issue Date or the date the Initial Premium is received in good order at our Administrative Order.   In some riders and supplemental benefits, the date of coverage effectiveness is referred to as the "Effective Date" or the "Policy Effective Date."

*   *   *

**2.6  Incontestability**

We have the right to contest the validity of this Policy and any Policy rider based upon material misrepresentations made in the initial application, in subsequent

application attached to the Policy, or in any amendment or endorsement to the applications. With respect to each insured, covered under this Policy, coverage under this Policy will be incontestable after it has been in effect during the life time of that Insured for two years…. The contestability period will not, however, be limited in the case of fraud and the procurement of a Policy… when submitted by applicable law in the state where the Policy is delivered or issued for delivery, or in the case of non-payment of the premium.

31.     The Decedent died on February 17, 2018, due to Lymphatoid Granulomatosis Grade 3.

32.     Following notice of Decedent's death, and during the course of Symetra's investigation, Symetra discovered, for the first time, that the representations and statements made by Decedent in the Applications were materially false; that Decedent, knowingly and intentionally failed and omitted to disclose material facts; and otherwise knowingly and intentionally failed to accurately, honestly and/or truthfully disclose material information in response to the questions present on the Applications which, if disclosed, Symetra would have declined to issue the Life Policies as applied for.

33.     Specifically, and by way of illustration only, Decedent knowingly and intentionally made misstatements of fact, failed, refused and omitted to disclose material facts, and otherwise failed to correctly answer and disclose:

a.      On April 7, 2009, Decedent received a physical examination from the Princeton Longevity Center and underwent numerous diagnostic tests and lab work. In the Princeton Longevity Center's 17-page summary of the visit, it is noted that a CT was performed with results including a possible long nodule measuring 10 mm in diameter in the right upper lung lobe and two cysts or lesions on the left kidney. Recommendations including obtaining a PET scan, possible biopsy, follow-up of CT scans, and consultation with a pulmonologist or thoracic surgeon.

b.      On May 13, 2010, Decedent received another physical examination at Princeton Longevity Center and follow-up to the April 2009 visit. Additional diagnostic tests and lab work was completed. The report of this visit indicates a CT scan was pending, and no results or findings were within the records provided to Symetra.

    c.      On April 15, 2015, Decedent underwent a Comprehensive Preventative Medical Exam at Princeton Longevity Center. During the April 15, 2015 exam, Decedent underwent lab work and multiple diagnostic tests including a CT scan of the chest, abdomen and pelvis area. Findings from the CT scan included, "multiple scattered pulmonary nodules are seen in both lungs, with the dominate nodule measuring 11x 10 mm, along with a 12 mm in the right upper lobe." It was also noted that a 1.6 cm nodule found in the upper part of the left kidney. Recommendations included obtaining an MRI of the kidney for further evaluation and PET CT for further evaluation of the lung nodules or a close follow-up.

34.    Given the medical history outlined above, it was evident that the Decedent should have answered "Yes" to the Medical Questions on Part II of the Applications as set forth above. In addition, with respect to every "yes" answer, the "DETAILS" section of the Applications required that the Decedent to "identify the question number and include diagnosis, dates, duration, treatment and medication prescribed and names/addresses of all physicians and hospitals." Decedent should have disclosed his treatment for lung and kidney cysts, the additional tests completed, and the physicals performed at Princeton Longevity Center on April 7, 2009, May 13, 2010 and April 15, 2015.

35.    Records received from Princeton Longevity Center also demonstrated that as Decedent was signing Part II of the Applications of August 5, 2016, he was scheduled to be seen on August 9, 2016, for another Comprehensive Preventive Medicine Exam.

36.    Records received during discovery document that Decedent, Kelley, and possibly Lerner, as Trustee, knew about the August 9, 2016 appointment at Princeton Longevity Center when Decedent signed Part II of the Applications on August 5, 2016.

37.    Records received during discovery document that the appointment at Princeton Longevity Center was scheduled in or around early June 2016 and Decedent, Kelley and possibly Lerner, as Trustee, knew that testing would be performed as part of the Comprehensive

Prevention Medical Exam that was required to be disclosed in the Applications.

38.     Decedent, Kelly and possibly Lerner, as Trustee, knowingly and intentionally made misrepresentations of facts, concealed and/or failed, refused or omitted to disclose any information to Symetra about the August 9, 2016 examination and testing at Princeton Longevity Center that was material to Decedent's application and the issuance of the Life Policies by Symetra.

39.     Decedent was the Chairman and Chief Executive Officer of Akrixmax Pharmaceuticals LLC ("Akrimax"). Documents produced in discovery demonstrate that on August 9, 2016, the day of the Princeton Longevity Center exam, Kelley sent an e-mail to Tim Soule ("Soule"), a Vice President at Akrimax, telling Soule, "You can activate the $15 million now and make a decision on $10 million next week if you like, but if anything negative is learned today we may possibly have to disclose that." In sending the email, Kelley assisted, conspired and urged Soule and/or Decedent to conceal material facts from Symetra that were material to Decedent's Applications and his seeking the issuance of the Life Policies from Symetra.

40.     Kelley knew that the results of the Princeton Longevity Center exam may affect Decedent's insurability and were material in determining Decedent's eligibility for insurance. This is demonstrated by the foregoing email and another produced in discovery from Kelley to Soule dated August 9, 2016, stating, in pertinent part:

- important to be aware we're in a holding pattern at this point, which means if something happens to Joe prior to payment being sent there would not be any coverage.  Once payment is verified coverage is effective, that would either be wire confirmation or copy of check along with overnight delivery tracking number....

41.     On August 9, 2016, Kelley sent another email to Lisa Shann, an employee of

Akrimax, stating, in pertinent part:

> I sent email to Tim with all the details… Joe's policies have been approved and Lerner will sign delivery receipt as Trustee.

> The only remaining step to activate coverage is for payment to be sent via wire or overnight mail and Tim has those details.

42.    On August 9, 2016, Symetra approved the issuance of the Life Policies, and sent correspondence to the general agent, Northeast Brokerage Inc. ("NBI"), telling NBI the policies had been approved "with the request that the following requirements be returned to us." The requirements included that Decedent submit a dated and signed Supplemental to Application Health Statement form ("Supplemental Health Statement").

43.    During discovery, Michael Costello, a partner at his NBI, testified at deposition that Kelley asked him to request that the Supplemental Health Statement requirement be waived.

44.    Decedent and Kelley knew that Decedent was scheduled to have an exam at Princeton Longevity Center on August 9, 2016, when Kelley requested the waiver of the Supplemental Health Statement but failed to disclose to Symetra the appointment and testing scheduled at Princeton Longevity Center which was material and relevant to Symetra's decision to waive the signing of the Supplemental Health Statement form.

45.    Mr. Costello, at Kelley's direction, requested that Symetra waive the signing of the Supplemental Health Statement form.

46.    Kelley knew that Decedent had an appointment at Princeton Longevity Center on August 9, 2016, which was material to whether Decedent was eligible for the Life Policies, but concealed and knowingly failed to disclose to Symetra the August 9, 2016 appointment at Princeton Longevity Center when he urged Costello to seek from Symetra a waiver of the submission of the Supplemental Health Statement form. In particular, an email was produced

during discovery dated August 10, 2016, from Kelley to Soule stating in pertinent part:

> Attached is the health statement that typically needs to be signed at time of issue. We fought pretty damn hard to have this requirement waived not knowing what may transpire yesterday ... hopefully all went extremely well and Joe passed with flying colors!!

47.     Kelley knew the results of Princeton Longevity Center would be material to any decision by Symetra to insure Decedent when he urged Costello to request that Symetra waive the submission of a signed Supplemental Health Statement form, but concealed and knowingly failed to disclose to Symetra the August 9, 2016 appointment at Princeton Longevity Center. This is documented in an August 12, 2016, email from Kelley to Soule stating, in pertinent part:

> Providing things went well put the Tuesday $15M at $409K in place.
>
> If things were not good on Tuesday, put the full $25M to age 100 in place at $709K.
>
> The window where coverage is approved and all that remains to activate is payment makes me nervous.  I know the kids will be find regardless, but it doesn't make sense to let it linger.

48.     With respect to that exam at the Princeton Longevity Center, Decedent and Kelley and possibly the Trustee, knowingly and intentionally made misrepresentations of a facts and failed, refused and omitted to disclose material facts which included:

> a. on August 9, 2016, he had numerous diagnostic tests performed, including an EKG, EBCT, stress tests, bloodwork and CT scan.
>
> b. the CT scan of the chest, abdomen and pelvis from this visit was compared to the April 15, 2015 scan, and the impression was stated to include, "Progression of metastatic lung disease.  Lung masses and nodules have increased in size and number since 04/15/2015," enlarged spleen and at least three kidney nodules.
>
> c. during this examination, it was recommended that Decedent obtain an urgent evaluation from a thoracic surgeon and the "multiple large nodules in both lungs" biopsied.

49.     Decedent, Kelley and possibly the Trustee, knowingly and intentionally made

13

misrepresentations of facts and failed, refused and omitted to disclose that subsequent to the August 9, 2016, Comprehensive Medicine Exam at Princeton Longevity Center, Decedent received treatment and/or an examination at Morristown Medical Center as early as August 12, 2016, at which time a chest X-ray and biopsy of the lungs were performed.

50.     Decedent, Kelley and possibly the Trustee, knowingly and intentionally made misrepresentation of facts and failed, refused and omitted to disclose that Decedent was admitted to Morristown Medical Center from August 26, 2016 to August 27, 2016, at which time Decedent underwent a left wedge biopsy and was diagnosed with Hodgkin's Lymphoma.

51.     Decedent, Kelley and possibly the Trustee, knowingly and intentionally made misrepresentations of facts and failed, refused and omitted to disclose that Decedent sought treatment, consultation and/or examination from the Mayo Clinic in Phoenix, Arizona commencing as of September 20, 2016.  The September 20, 2016 records from the Mayo Clinic state that the reason for the consultation was "classic Hodgkin's Lymphoma Stage IV."

52.     On September 26, 2016, Decedent's diagnosis was changed to Lymphatoid Granulomatosis Grade 3.

53.     Discovery has resulted in the production of documents evidencing that Decedent, Kelley and the Trustee, actively conspired, concealed and failed to disclose the foregoing information to Symetra that was material to Decedent's Applications and Symetra's decision to issue the Life Policies.

54.     Kelley concealed Decedent's ongoing medical treatment that was material to his insurability when he urged Mr. Costello to request the waiver of the submission of a signed Supplemental Health Statement form as detailed  above and again on September 1, 2016, when he urged Mr. Costello to send an email to Symetra stating as follows:

14

This is a message from the Broker John KELLEY:

*   *   *

I am dealing with 9/1 case issues not looking for strategy back and forth right now. Know we are coming up on a window that's closing. I overnighted policies on 8/15 for delivery on 8/16 and believe he has 30 days from receipt to execute requirements or run risk of offers being pulled and other conditions of issue coming into play, correct?
What is the time line for a HS [health statement] or any other mandate

55.     In making this request, Kelley concealed and knowingly failed to disclose the aforementioned medical treatment, consultation, examination, testing and diagnoses which were material and relevant to any decision by Symetra with respect to the Applications and Symetra's ultimate decision to issue the Life Policies as applied for.

56.     Without knowledge of the foregoing consultation, examination, testing and diagnostic treatment, Ron Sarra, on behalf of Symetra, responded:

We issued them on August 9th and 10th. The Part 2 is good until 9/22 so we can extend to that date without any additional req….

57.     Mr. Costello sent this response to Kelley on September 2, 2016.

58.     Discovery revealed thereafter Kelley spoke with Decedent, Soule and/or the Trustee, on behalf of the Trust, and assisted, conspired with and urged them to conceal and not disclose the aforementioned medical treatment, consultation, examination, testing and diagnoses that occurred between August 9, 2016 and September 21, 2016, the effective date of the Life Policies and the date the Life Policies were delivered and the first modal premium was paid.

59.     In particular, documents produced in discovery include an e-mail dated September 8, 2016 from Kelley to Decedent and Soule, copying Lerner, stating, in pertinent part:

As discussed you can absolutely put the life insurance policies in place without any additional health disclosures and not have any risk in coverage being denied

due to health conditions discovered since issuance of the policies. Symetra agreed to waive any additional requirements due to the length of the process, the fact that we provided favorable medical records from most recent visits with Dr. Sandberg on 05/26/2016 and Dr. Rigel on 05/24/2016....

* * *

Attached hereto are email strings:

1.  Confirmation from Ann Ellis, Senior Life New Business Case Manager dated August 9th stating Symetra agrees to waive the supplemental health statement requirement.

2.  Confirmation from Ron Sarra, Regional Vice President, dated September 2nd stating the policies issued are good until September 22nd without any additional requirements.

Tim is already in receipt of policies and all that's required to put coverage in place is to remit premium payments by the trust....

60.  Discovery produced by the Trust includes an email dated September 12, 2016, from Soule to Lerner dated September 12, 2016, explicitly questioning Kelley's oral and written statements:

Michael,

Last week John Kelley sent you information about Symetra's life insurance commitment to insure JJK. We want to make sure it holds water given Joe has a "change in condition." This is time sensitive but we want your opinion.

61.  The series of emails indisputably demonstrate a pattern of Decedent, Kelley and the Trustee knowing about Decedent's change in condition and concealing and knowingly failing to disclose this information which was material to the Applications, Decedent's continued eligibility for the Life Policies and Symetra's decision to issue the Life Policies.

62.  Symetra never waived, nor was requested to waive, the Life Policies requirements that "all persons proposed for insurance are living and insurable as set forth in the application at the time the policy is delivered to the Owner and the first modal premium is paid." Moreover,

any other "waiver" was the result of the Decedent's, the Trustee's and/or Kelley's intentional misrepresentation and omission of facts, known to them but not Symetra, that were material to the request when made.

63.     During discovery, Mr. Costello testified at his deposition that Symetra never waived the Life Policies requirements that "all persons proposed for insurance [be] living and insurable as set forth in the application at the time the policy is delivered to its Owner and the first modal premium is paid."

64.     Decedent, Kelley and the Trustee, all knew and failed to disclose to Symetra that Decedent was not "insurable as set forth in the application at the time [the] policy [was] delivered to the Owner and the first modal premium [was] paid" on September 21, 2016.

65.     Moreover, Symetra included as a delivery requirement, as evidenced by multiple correspondence reminders, including one dated September 21, 2016, the following:  "If your client's health has changed, please contact our Home Office Underwriting Department before delivery of the policy."

66.     Despite all of the medical treatment, consultation, examination, testing and diagnoses occurring prior to the effective date, delivery or payment of the first modal premium (with the exception of the ultimate diagnosis of Lymphatoid Granulomatosis Grade 3 which occurred five days later), none of the foregoing information was disclosed to Symetra, either at the time of the application, nor at any time prior to the Life Policies effective and the payment of the first modal premium on September 21, 2016.

67.     Decedent, Kelley and the Trustee, all knowingly concealed and failed to disclose the foregoing relevant information and assisted, conspired with and urged Costello to seek a waiver of the Supplemental Health Statement with full knowledge of the medical treatment,

consultation, examination, testing and diagnoses which were all material to his insurance applications.

68.     Decedent, Kelley and the Trustee, did not disclose and materially omitted the foregoing testing and treatment, consultations, examination, testing and diagnoses that occurred prior to the effective date of the Policies, the payment of first modal premium and delivery and at all times prior to Decedent's death through and including March 2018, when a claim seeking life insurance benefits under the Life Policies was first submitted to Symetra never disclosed the foregoing to Symetra.

69.     In correspondence dated August 1, 2018, Symetra advised the Trustee, that it formally declared the rescission, *ab initio*, of the Life Policies and issued a check representing a refund of all premiums paid to Symetra.

70.     After the Decedent died, Kelley telephoned Symetra regarding submitting a claim seeking benefits under the Life Policies.   Kelley subsequently requested to be permitted to complete the Individual Life Claims Health Statement on behalf of the Trust, which he did on March 21, 2018.

71.     Kelley also completed and executed an agent statement on May 2, 2018, directly below the following warning:

> WARNING: A person who knowingly and with intent to injure, defraud, or deceive an insurance company, files information containing false, incomplete, or misleading information may be guilty of a felony or misdemeanor. I declare the facts stated on this form are complete and true to the best of my knowledge and belief.

72.     However, the information provided by Kelley on the agent's statement was not complete and true to the best of his knowledge and belief.  In particular, in response to Question 13, Kelley responded "No" to the question: "Was any medical history or other conditions

regarding the applicant's insurability disclosed to you <u>after</u> submitting the application <u>but before</u> policy delivery?"  Kelly concealed and knowingly failed to disclose in support of the Trust's claim for benefits "medical history or other condition" which was relevant to Decedent's insurability and was known to him after the submission of the Applications but before he delivered the Life Policies and the first modal premium was paid.

## FIRST COUNT

73.     Symetra repeats and realleges the allegations contained in paragraphs 1 through 72 of the amended complaint as if set forth herein at length.

74.     As is set forth more fully in the preceding paragraphs, Decedent knowingly and intentionally misrepresented, concealed and/or failed to disclose his complete medical history, including consultations with physicians and providers, testing, treatment and diagnosis he had received when he completed the Applications seeking the issuance of the Life Policies.

75.     Decedent made false material misrepresentations of presently existing or past facts when he completed the Applications seeking the issuance of the Life Policies.

76.     Symetra relied on the false material misrepresentations of Decedent and issued the Life Policies of life insurance.

77.     Symetra has no adequate remedy at law, and therefore seeks that the Life Policies be declared null and void and rescinded, *ab initio*.

WHEREFORE, Symetra demands judgment against the Trust for relief more particularly described as follows:

(a)     an order declaring and adjudging the Life Policies bearing policy nos. AA6120468 and AA6114869 to be null and void and rescinded, *ab initio*; and

(b)     an order awarding pre-judgment interest, post-judgment interest, costs of suit, reasonable attorney fees and such other relief the Court deems equitable and just.

## SECOND COUNT

78.     Symetra repeats and realleges the allegations contained in paragraphs 1 through 77 of the amended complaint as if set forth herein at length.

79.     Decedent knowingly, negligently and/or innocently made material misstatements of fact; failed to disclose material facts in response to the questions presented on the insurance Applications; and otherwise failed, refused and/or omitted to disclose material facts, all of which as aforesaid.

80.     Symetra has no adequate remedy at law, and therefore seeks that the Life Policies be declared null and void and rescinded, *ab initio*.

WHEREFORE, Symetra demands judgment against the Trust for relief more particularly described as follows:

(a)     an order declaring and adjudging the Life Policies bearing policy nos. AA6120468 and AA6114869 to be null and void and rescinded, *ab initio*; and

(b)     an order awarding pre-judgment interest, post-judgment interest, costs of suit, reasonable attorney fees and such other relief the Court deems equitable and just.

## THIRD COUNT

81.     Symetra repeats and realleges the allegations contained in paragraphs 1 through 80 of the amended complaint as if set forth herein at length.

82.     Symetra issued the Life Policies pursuant to, and in accordance with, a mistake of fact, all of which as aforesaid.

83.     Symetra has no adequate remedy at law, and therefore seeks that the Life Policies

be declared null and void and rescinded, *ab initio*.

WHEREFORE, Symetra demands judgment against the Trust for relief more particularly described as follows:

(a)     an order declaring and adjudging the Life Policies bearing policy nos. AA6120468 and AA6114869 to be null and void and rescinded, *ab initio*; and

(b)     an order awarding pre-judgment interest, post-judgment interest, costs of suit, reasonable attorney fees and such other relief the Court deems equitable and just.

## FOURTH COUNT

84.     Symetra repeats and realleges the allegations contained in paragraphs 1 through 82 of the amended complaint as if set forth herein at length.

85.     The Life Policies explicitly provide:

**2. GENERAL PROVISIONS**

**2.1  The Entire Contract**

This Policy is Our contract with You. We issue this Policy in consideration of Your Application and payment of the Initial Premium.

The entire contract is made up of this Policy, attached copies of the Application(s), including an questionnaires for issuance or reinstatement of the Policy, and attached copies of all coverage descriptions, endorsements, amendments, riders, and Policy change forms.

\*   \*   \*

**2.2  Change of Contract**

Only our President, Secretary, Vice President or Assistant Secretary to modify this Policy or waive any of Our rights or requirements under it.  The person making these changes must put them in writing and sign them.

**2.3  Coverage Effectiveness**

Coverage will take effect and be in force on the later of the Issue Date or the date the Initial Premium is received in good order at our Administrative Order. In some riders and supplemental benefits, the date of coverage effectiveness is referred to as the "Effective Date" or the "Policy Effective Date."

*  *  *

**2.6 Incontestability**

We have the right to contest the validity of this Policy and any Policy rider based upon material misrepresentations made in the initial application, in subsequent application attached to the Policy, or in any amendment or endorsement to the applications. With respect to each insured, covered under this Policy, coverage under this Policy will be incontestable after it has been in effect during the life time of that Insured for two years…. The contestability period will not, however, be limited in the case of fraud and the procurement of a Policy… when submitted by applicable law in the state where the Policy is delivered or issued for delivery, or in the case of non-payment of the premium.

86.     On the date the Life Policies were delivered and accepted and the first modal premium paid, there had been a material and substantial change in the Decedent's health from that represented on the Applications and the Decedent was not insurable as set forth in the Applications.

87.     Decedent failed to satisfy the conditions precedent for coverage to be effective under the Life Policies.

88.     Symetra has no adequate remedy at law, and therefore seeks that the terms and provisions of the Life Policies pertaining to the conditions precedent to the effectiveness of coverage be specifically enforced.

WHEREFORE, Symetra demands judgment against the Trust for relief more particularly described as follows:

(a)     an order specifically enforcing the conditions precedent to the effectiveness of coverage under and pursuant to the Life Policies bearing policy nos. AA6120468 and AA6114869; and

(b)      an order declaring and adjudging that the Life Policies bearing policy nos. AA6120468 and AA6114869 was and is not effective, and is null and void and of no force and effect; and

(c)      an order awarding pre-judgment interest, post-judgment interest, costs of suit, reasonable attorney fees and such other relief as the Court deems equitable and just.

### FIFTH COUNT

89.      Symetra repeats and realleges the allegations contained in paragraphs 1 through 88 of the amended complaint as if set forth herein at length.

90.      Decedent, the Trustee and Kelley were at all times relevant to the execution and submission of the Applications seeking the issuance of the Life Policies under a duty of honesty, good faith and fair dealing to immediately and forthwith advise Symetra of any material change in his insurability from that represented in the Applications which may occur any time prior to the issuance, delivery and acceptance of the Life Policies and payment of the first modal premium.

91.      Decedent, the Trustee and Kelley intentionally, willfully, and/or negligently failed, refused and/or neglected to disclose, inform, conceal or otherwise advise Symetra that his insurability materially changed from that represented on the Applications prior to the issuance, delivery and acceptance of the Life Policies and payment of the first modal premium.

92.      As a direct and proximate result of Decedent's, the Trustee's and Kelley's breach of the duties of honesty, good faith and fair dealing, Symetra issued the Life Policies, and has otherwise sustained damages.

93.      Symetra has no adequate remedy at law, and therefore, seeks that the Life Policies be declared null and void and rescinded, *ab initio*.

94. In the alternative, Symetra has no adequate remedy at law, and therefore seeks that the terms and provisions of the Life Policies pertaining to the conditions precedent to the effectiveness of coverage be specifically enforced.

WHEREFORE, Symetra demands judgment against the Trust for relief more particularly described as follows:

(a) an order specifically enforcing the conditions precedent to the effectiveness of coverage under and pursuant to the Life Policies bearing policy nos. AA6120468 and AA6114869; and

(b) an order declaring and adjudging that the Life Policies bearing policy nos. AA6120468 and AA6114869 was and is not effective given the material change in Decedent's insurability from that represented and stated in the Applications thereby rendering the Life Policies null and void and of no force and effect; and

(c) an order declaring and adjudging the Life Policies bearing policy nos. AA6120468 and AA6114869 to be null and void and rescinded, ab initio; and

(d) an order awarding pre-judgment interest, post-judgment interest, costs of suit, reasonable attorney fees and such other relief as the Court deems equitable and just.

## SIXTH COUNT

95. Symetra repeats and realleges the allegations contained in paragraphs 1 through 94 of the amended complaint as if set forth herein at length.

96. At all times relevant, Kelley was and is a signatory to a Sales Agreement with Symetra and is intimately familiar with the procedures maintained by Symetra, and other insurers, regarding the taking of life insurance applications and the delivery of life insurance policies.

97.    Kelley knew that he was never to submit an application to Symetra where he knew that the application contained incomplete or false information or omitted material information that adversely affected the applicant's insurability.

98.    In fact, Symetra sent multiple correspondences stating, in pertinent part:

- If your client's health has changed, please contact our Home Office Underwriting Department before delivery of the policy.

99.    Kelley knew that upon delivery of a life insurance policy, he was required to review the policy and each part of the application to insure that there had been no changes in the Decedent's insurability from that represented on the application.

100.   Kelley was licensed as an insurance producer in 2016, and was, during all relevant times, a knowledgeable, sophisticated insurance producer specializing in life insurance sales.

101.   Kelley knowingly benefited from his violations of the Act.

102.   Lerner testified that he graduated from Hofstra Law School in 1983 and had the opportunity to review and provide professional advice to clients regarding contracts and knew the importance of parties to contracts acting in good-faith and their importance of being a meeting of the minds.

103.   The Trust and Kelley benefited from the Trustee's and Kelley's violations of the Act.

104.   Decedent, Lerner on behalf of the Trust, and Kelley engaged in a pattern of violating the Act.

105.   As is set forth more fully in the preceding paragraphs, the Decedent, Lerner on behalf of the Trust, and Kelley conspired, knowingly misrepresented, concealed and/or failed to disclose the complete medical history, consultations with physicians and other providers,

25

medical treatment, diagnoses, that were material to the Applications in seeking the issuance of the Life Policies within the meaning and intent of the New Jersey Insurance Fraud Prevention Act and, in particular, N.J.S.A. 17:33A-4.

106.    As is set forth more fully in the preceding paragraphs, the Decedent, Lerner on behalf of the Trust, and Kelley knowingly made multiple written and/or oral statements intended to be presented for the purpose of obtaining policies of life insurance knowing that the statements contained false and misleading information material to the Applications and Life Policies within the meaning and intent of the New Jersey Insurance Fraud Prevention Act and, in particular, N.J.S.A. 17:33A-4.

107.    As is set forth more fully herein, Decedent, Lerner on behalf of the Trust, and Kelley assisted, conspired and urged others to conceal and knowingly fail to disclose the occurrence of events and knowingly made statements containing false and misleading information concerning Decedent's Applications and the issuance of the Life Policies within the meaning and intent of the New Jersey Insurance Fraud Prevention Act and, in particular N.J.S.A. 17:33A-4.

108.    As is set forth more fully herein, Decedent, Lerner on behalf of the Trust, and Kelley knowingly presented written and/or oral statements as part of and in support of the claim seeking payment of the death benefit under the Policies knowing that the statements contained false and misleading information concerning facts material to his claim within the meaning and intent of the New Jersey Insurance Fraud Prevention Act and, in particular, N.J.S.A. 17:33-A-4.

109.    As is more fully set forth herein, Decedent, Lerner on behalf of the Trust and Kelley engaged in a pattern violating the New Jersey Insurance Fraud Prevention Act.

WHEREFORE, Symetra demands judgment against the Trust and Kelley for relief more

particularly described as follows:

(a)     an order specifically enforcing the conditions precedent to the effectiveness of coverage under and pursuant to the Life Policies bearing policy nos. AA6120468 and AA6114869; and

(b)     an order declaring and adjudging that the Life Policies bearing policy nos. AA6120468 and AA6114869 was and is not effective given the material change in Decedent's insurability from that represented and stated in the Applications thereby rendering the Life Policies null and void and of no force and effect; and

(c)     an order declaring and adjudging the Life Policies bearing policy nos. AA6120468 and AA6114869 to be null and void and rescinded, ab initio; and

(d)     an order awarding that monetary judgment in favor of Symetra providing compensatory damages in the amount of $1,466,354.50 representing compensation, damages or commissions paid that have not been repaid to date trebled in accordance with the Act; and

(e)     an order awarding reasonable investigation costs, costs of suit, reasonable attorneys' fees, pre-judgment interest, post-judgment interest, trebled and such other relief as the Court may deem equitable and just to be proved at trial.

## SEVENTH COUNT

110.    Symetra repeats and realleges the allegations contained in paragraph 1 through 109 of the amended complaint as if set forth herein at length.

111.    On July 23, 2016, Kelley, on behalf of Patriot executed a Sales Agreement, acknowledging, accepting and agreeing to the terms of the Sales Agreement in accordance with the terms of the Sales Agreement, duly having obligation to "Act with integrity, which includes being honest with customers and Company."

112.   Kelley testified at his deposition that Patriot is a Single Member LLC.

113.   In accordance with the terms of the Sales Agreement, Kelley was an independent contractor and had no authority to:  (a) Make or discharge any Contract . . . [or]; (c) Waive or extend any Contract provision."

114.   In accordance with the terms of the Sales Agreement, Patriot and Kelly were obligated to return the commissions paid upon the rescission of the Life Policies on August 1, 2018.  In particular, the Sales Agreement provides, in pertinent part:

> If Company returns any portion of the Premiums on a Contract previously issued or rescinds a Contract or returns all Premiums on such Contract, Agency will pay to Company the commission previously received with respect to the returned Premiums . . .

115.   In addition, the Sales Agreement provides:

> 1.  Agency agrees to pay Company, on demand, the amount of any debt hereunder then remaining unpaid by Agency and/or any Sub-Agency supervised by Agency, including repayment of commissions and overrides charged back to Agency and/or any Sub-Agency supervised by Agency in the event of a Contract Lapse.

116.   Finally, the Sales Agreement provides:  "Agency has no authority to deliver any Contract unless the applicant therein is, at the time of delivery, in good health and insurable condition."

117.   On August 1, 2018, the Life Policies were formerly rescinded *ab initio* by Symetra and Symetra returned all payments paid with respect to the Life Policies to the Trust.

118.   Symetra has made numerous demands for Kelley and/or Patriot to return the commissions paid to Kelley and Patriot, in the amount of $488,784.85.

119.   Kelly and Patriot has not repaid the commissions to Symetra.

28

WHEREFORE, Symetra requests that the Court enter judgment against Kelley and Patriot in accordance with the Sales Agreement currently in the amount of $488,784.85, plus pre-judgment and post-judgment interest and costs and such other relief as this Court deems just and proper.

## EIGHTH COUNT

120.    Symetra repeats and realleges the allegations contained in paragraph 1 through 119 of the amended complaint as if set forth herein at length.

121.    As a result of Kelley and Patriot's failure to repay Symetra, Kelley and Patriot have been unjustly enriched.

122.    As a result of Kelley and Patriot's unjust enrichment, Symetra has suffered damages totaling the amount of at least $488,784.85, plus prejudgment and post judgment interest and costs and such other relief as this Court deems equitable and just.

WHEREFORE, Symetra requests that the Court enter judgment against Kelley and Patriot currently in the amount of $488,784.85, plus pre-judgment and post-judgment interest and costs and such other relief as this Court deems just and proper.

Dated:  February 20, 2020

McELROY, DEUTSCH, MULVANEY
& CARPENTER, LLP
Attorneys for Plaintiff,
Symetra Life Insurance Company

By: _____
        Randi F. Knepper, Esq.

3916780_1