<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SYMETRA LIFE INSURANCE COMPANY,

          Plaintiff,

          v.

JJK 2016 INSURANCE TRUST, et al.,

          Defendants.

Civil Action No. 18-12350 (MAS) (ZNQ)

**MEMORANDUM OPINION**

<u>**SHIPP, District Judge**</u>

      This matter comes before the Court upon two Motions to Dismiss by Plaintiff Symetra Life Insurance Company ("Symetra"). The first Motion seeks to dismiss Counts One through Six of Defendants JJK 2016 Insurance Trust (the "Trust") and Trustee Michael Lerner's ("Lerner") (collectively, the "Trust") Counterclaim. (ECF No. 61.) The Trust opposed (ECF Nos. 70, 73), and Symetra replied (ECF No. 83). The second Motion seeks to dismiss Defendants John Kelley ("Kelley") and Patriot Benefit Solutions Insurance Agency's ("Patriot") (collectively, "Kelley") Counterclaim. (ECF No. 62.) Kelley opposed (ECF No. 72), and Symetra replied (ECF No. 84). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Rule 78.1. For the reasons set forth herein, Symetra's Motion to Dismiss Counts One through Six of the Trust's Counterclaim is granted in part and denied in part, and its Motion to Dismiss Kelley's Counterclaim is granted in part and denied in part.

I.  **BACKGROUND**[1]

The parties are familiar with the factual and procedural history of this case. The Court, therefore, recites only those facts necessary to resolve the instant Motions.

A.  **The Parties and Policies**

Symetra is a Washington company "in the business of underwriting policies of life insurance and is authorized to transact the business of insurance in the State of New Jersey." (Am. Compl. ¶¶ 1, 5, ECF No. 37.) The Trust was established on August 4, 2016 by and between Joseph J. Krivulka ("Krivulka") as grantor and Lerner as trustee for the purposes of Krivulka's estate planning. (*Id.* ¶ 6; Trust's Answer, Cross-cl., Countercl., and Third-Party Compl. ("Tr. Countercl.") 3, ¶ 6, 28, ¶ 5,[2] ECF No. 47.) Kelley is a licensed insurance producer and the "founding principal and sole member of Patriot," an "insurance brokerage and consulting firm based in North Andover, Massachusetts." (Am. Compl. ¶ 8; Kelley's Answer, Cross-Cl., Countercl., and Third-Party Compl. ("Kelley Countercl.") 3, ¶ 8, 31, ¶ 8, ECF No. 48.)

The instant matter relates to two Symetra life insurance policies (the "Policies") owned by the Trust insuring the life of Krivulka. (Am. Compl. ¶ 17; Tr. Countercl. 4, ¶ 17; Kelley Countercl. 4, ¶ 17.) On July 22, 2016 and August 5, 2016, Krivulka applied for the Policies, which contained a "death benefit of $15,000,000 and $10,000,000, respectively." (Am. Compl. ¶¶ 17, 22; Tr. Countercl. 4–5, ¶¶ 17, 22; Kelley Countercl. 4–5, ¶¶ 17, 22.) Kelley worked with another brokerage firm, Northeast Brokerage, Inc. ("NBI"), to secure the Policies on behalf of Krivulka and the Trust. (Kelley Countercl. 31–32, ¶¶ 9, 11–14.) On August 9, 2016, Symetra approved the

---

[1] For the purposes of the instant Motions, the Court summarizes and accepts as true the factual allegations of the Counterclaims. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[2] The numbering in both Counterclaims at issue restarts upon every new section. (*See generally* ECF Nos. 47, 48.) The Court, therefore, will refer to both the page and paragraph numbers when citing to the Counterclaims.

issuance of the Policies and requested NBI return a "Supplemental Health Statement" (the "Supplement") to Symetra. (Am. Compl. ¶ 42; Tr. Countercl. 11, ¶ 42; Kelley Countercl. 9, ¶ 42.) That same day, upon request from either Kelley or an NBI representative, Symetra agreed to waive the Supplement. (Tr. Countercl. 39, ¶¶ 63–66; Kelley Counterfcl. 35–36, ¶¶ 27–28.) On September 21, 2016, Symetra received the first premium payment for the Policies. (Tr. Countercl. 40, ¶ 69; Kelley Countercl. 37, ¶¶ 34–35.)

In February 2018, Krivulka died[3] and, shortly thereafter, the Trust submitted an insurance claim to Symetra. (Tr. Countercl. 41–42, ¶¶ 81–82; Kelley Countercl. 38, ¶¶ 40–41; Am. Compl. ¶ 31.) On August 1, 2018, however, Symetra sent correspondence to the Trust denying the claim, rescinding the Policies, and refunding the premium payments. (Tr. Countercl. 45, ¶ 92; Kelley Countercl. 38, ¶ 42; Am. Compl. ¶ 69.) The instant matter then ensued.

### B.    Symetra's Amended Complaint

Symetra alleges that while completing and executing the applications for the Policies on July 22, 2016 and August 5, 2016, Krivulka "knowingly and intentionally made misstatements of fact, failed, refused[,] and omitted to disclose material facts, and otherwise failed to correctly answer and disclose" the following: (1) an April 7, 2009 physical examination at Princeton Longevity Center ("PLC") that discovered "a possible long nodule" in Krivulka's lung and "two cysts or lesions on the left kidney"; (2) a May 13, 2010 physical examination at PLC during which "diagnostic tests and lab work [were] completed"; and (3) an April 15, 2015 "Comprehensive Medical Exam" at PLC that discovered "multiple scattered pulmonary nodules" in both of Krivulka's lungs and another nodule in the kidney. (Am. Compl. ¶ 33.) According to Symetra, the three PLC visits all indicated that follow-up evaluations, scans, and procedures were recommended

---

[3] Krivulka died of "a rare disease known as Lymphomatoid Granulomatosis Stage 3." (Tr. Countercl. 41, ¶¶ 80–81.)

to Krivulka. (*Id.* (including CT and PET scans, an MRI, and a possible biopsy).) Symetra maintains that Krivulka should have answered "yes" and not "no" to several of the applications' questions, including, (1) within the last ten years, have "you ever been treated, or been advised to be treated," for cysts; (2) within the last five years, "have you ever had" any "admission to [a] health care facility for treatment or observation for any illness, disease[,] or accident"; and (3) within the last twenty-four months, have you "been examined by any physician . . . or other health care practitioner . . . or by any hospital, clinic, or other health care facility not already disclosed on this application?" (*Id.* ¶¶ 25, 34.) Furthermore, for the questions in which Krivulka answered "yes," Symetra argues that he should have disclosed the PLC visits and examinations. (*Id.* ¶ 34.)

Symetra also asserts that while Krivulka was completing and executing the applications, "he, Kelley, and possibly Lerner, as Trustee," knew about—and failed to disclose—an upcoming August 9, 2016 appointment at PLC, which, according to Symetra, "was material to whether" Krivulka was eligible for the Policies. (*Id.* ¶¶ 35–38, 46.) Symetra alleges that because of this appointment, Krivulka and Kelley obtained the Supplement waiver, which allowed them and possibly Lerner to omit the PLC appointment and other subsequent medical examinations. (*Id.* ¶¶ 46–51.) Symetra maintains it "never waived, nor was requested to waive," the Policies' "requirements that 'all persons proposed for insurance are living and insurable as set forth in the application at the time the policy is delivered to the Owner and the first modal premium is paid.'" (*Id.* ¶ 62.) Furthermore, Symetra asserts that "any other 'waiver' was the result of" Krivulka, the Trust, and Kelley's "intentional misrepresentation and omission of facts, known to them but not Symetra, that were material to the request made." (*Id.*)

On February 20, 2020, Symetra filed an Amended Complaint requesting: (1) the Policies be declared null and void, (*id.* ¶¶ 73–94), and (2) a judgment against Kelley in the amount of the commissions Symetra paid in connection with the Policies, (*id.* ¶¶ 110–119). The Amended

4

Complaint also alleged (3) violations of the New Jersey Insurance Fraud Prevention Act ("IFPA"), N.J. Stat. Ann. § 17:33A-4, against Kelley and Lerner, (*id.* ¶¶ 95–109), and (4) unjust enrichment against Kelley, (*id.* ¶¶ 120–22).

### C.   The Trust's Counterclaim

The Trust maintains that Symetra engaged in "post-death underwriting"—"an improper practice by which an insurance company waits until a claim has been filed to obtain information and make underwriting decisions that should have been made when the application for insurance was made, not after the policy was issued." (Tr. Countercl. 47, ¶ 102.)

According to the Trust, at the time Krivulka sought Symetra's coverage, he was a sixty-four-year-old "diabetic[] with a history of hypertension, prostate issues, kidney issues, superventricular tachycardia, and Bell's palsy." (*Id.* at 33, ¶¶ 29–31 (noting that Krivulka was also diagnosed with Hepatitis B).) "Krivulka also suffered from a chronic[, debilitating] disease known as sarcoidosis," which causes "nodules or growths on internal organs, especially the lungs." (*Id.* at 33, ¶¶ 32–33.) The Trust maintains that all relevant times, Symetra knew of Krivulka's sarcoidosis diagnosis. (*Id.* at 33–35, ¶¶ 33, 36–40.) Furthermore, "Krivulka's medical history caused several major insurance companies other than Symetra to decline coverage, based upon the exact same information and documents that were provided to Symetra. AXA, for example, specifically declined coverage to Krivulka, in part because of Krivulka's sarcoidosis." (*Id.* at 35, ¶ 41.) The Trust asserts Krivulka did not list sarcoidosis on the applications for the Policies because he, along with his physician, "believed it to be a non-issue and in remission[.]" (*Id.* at 37, ¶ 57.) Moreover, Krivulka did not list the PLC examinations on the applications because he felt the related questions "referred to actual hands-on treatment facilities as opposed to an executive wellness review of the type offered by PLC, and that PLC was not a 'hospital, clinic, or other healthcare facility.'" (*Id.* at 38, ¶ 59.)

5

According to the Trust, in seeking the Supplement waiver, Kelley was concerned about "the months of delay in placing coverage" and "the previous false positive reading of Hepatitis B, which caused Symetra unnecessarily to protract the underwriting review"—not Krivulka's sarcoidosis or nodes. (*Id.* at 39, ¶ 63.) The Trust alleges that a Symetra agent agreed, stating that the Supplement "just convolutes, and it's just going to deter the placement" of the Policies. (*Id.* at 39, ¶ 65; *see also id.* at 47–48, ¶ 103 ("Before the claim in this case was filed, Symetra never requested records relating to Krivulka's sarcoidosis, deeming it to be immaterial[.]").) At the August 9, 2016 PLC visit, however, it was discovered that the nodules associated with Krivulka's sarcoidosis had grown. (*Id.* at 40, ¶ 73.) Krivulka then underwent a biopsy on August 12, 2016, which resulted in an incorrect diagnosis of non-Hodgkin's lymphoma. (*Id.* at 40, ¶¶ 74–75.) The Trust asserts that, in September 2016, Kelley, Lerner, and a Symetra agent discussed "whether a change in Krivulka's condition would affect the Policies." (*Id.* at 41, ¶ 77.) "Relying on the good faith and clear communications of Symetra representatives . . . that no additional medical disclosures were necessary following the issuance of the Policies on August 9, 2016, and that any further disclosures had been waived," Kelley and the Symetra agent "concluded that no further action was necessary with Symetra other than payment of" the Policies' premiums. (*Id.*)

On May 13, 2020, the Trust filed a Counterclaim against Symetra for "making, and then improperly refusing to honor, specific written and oral representations as to the requirements necessary to put insurance coverage into effect[]" and engaging in bad-faith conduct in handling the Policies. (*Id.* at 27–28, ¶¶ 1–3.) The Counterclaim alleges against Symetra: (1) violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-2, (*id.* at 49–51, ¶¶ 105–115), (2) common law fraud, (*id.* at 51–52, ¶¶ 116–18), (3) negligent misrepresentation, (*id.* at 52, ¶¶ 119–21), (4) breach of the duty of good faith and fair dealing, (*id.* at 53–55, ¶¶ 122–26), (5) breach of the duty of good faith and fair dealing in litigation, (*id.* at 55–56,

¶¶ 127–131), (6) abuse of process, (*id.* at 56, ¶¶ 132–34), and (7) breach of contract, (*id.* at 57, ¶¶ 135–38). Symetra now moves to dismiss Counts One through Six of the Trust's Counterclaim. (ECF No. 61.)

### D.    Kelley's Counterclaim

Kelley's Counterclaim contains many of the same factual assertions as the Trust's Counterclaim, including allegations related to the Supplement waiver and denial of benefits under the Policies. (*Compare* Kelley Countercl. 29–39, ¶¶ 1–45, *with* Tr. Countercl. 27–48, ¶¶ 1–104.) Kelley asserts he was contacted by Krivulka in late 2015 to procure a life insurance policy "for him that would benefit the Trust." (Kelley Countercl. 32, ¶¶ 13–14.) To do so, Kelley worked with Michael Costello ("Costello") of NBI, who he had often worked with "when placing individual life insurance policies." (*Id.* at 31–32, ¶¶ 9, 14.) According to Kelley, "Costello and/or NBI entered into, and at all times relevant were subject to, an agency agreement with Symetra." (*Id.* at 31, ¶ 10.) Kelley also asserts that, in connection with the "sale and placement of life insurance policies through Symetra," Kelley entered into a sales agreement (the "Sales Agreement") which "set forth terms and conditions pursuant to which commissions are earned by and paid to Kelley . . . from Symetra" in the event one of Kelley's clients purchased a Symetra policy. (*Id.* at 32, ¶ 12.)

Like the Trust, Kelley maintains Symetra was aware of Krivulka's sarcoidosis and lung modules throughout the Policies' underwriting process, as well as Krivulka's August 9, 2016 post-policy application PLC appointment. (*Id.* at 33–35, ¶¶ 20, 25.) Kelley further contends that, "[b]ecause the appointment at PLC was a voluntary physical examination that was for preventative medical purposes and not a health condition, neither the Trust, Krivulka[,] nor Kelley . . . were required to notify Symetra about its pendency." (*Id.* at 35, ¶ 25.) Kelley notes that, despite its awareness of Krivulka's medical condition and the PLC appointment, Symetra issued approval for the Policies and waived the Supplement. (*Id.* at 35–36, ¶¶ 26–28.) According to Kelley, "Symetra

7

was highly motivated to finalize the sale of the [P]olicies and therefore waived any requirement that the Trust and/or Krivulka disclose any adverse health conditions and supplemental health conditions . . . after August 9, 2016." (*Id.* at 36, ¶ 29.)

Kelley contends he "relied on Symetra's multiple written representations concerning its voluntary waiver of the Supplement . . . and related disclosure requirements when advising Krivulka about Symetra's offer and taking action to secure the issuance of the Policies on behalf of Krivulka/the Trust." (*Id.* at 27, ¶ 31.) After denying the Trust's insurance claim, rescinding the Policies, and returning the premiums, Kelley asserts Symetra demanded he "return the total amount of commissions paid by Symetra relating to the Policies pursuant to the terms of the Sales Agreement." (*Id.* at 38, ¶ 43.) Kelley, however, has not repaid the commissions. (*Id.* at 38, ¶ 44.) On May 14, 2020, Kelley filed a Counterclaim against Symetra asserting: (1) violations of the NJCFA, (*id.* at 39–43, ¶¶ 46–59), (2) fraudulent misrepresentation, (*id.* at 43–44, ¶¶ 60–65), (3) negligent misrepresentation, (*id.* at 44–46, ¶¶ 66–72), and (4) promissory estoppel, (*id.* at 46–48, ¶¶ 73–79).

## II.   **LEGAL STANDARD**

Rule 8(a)(2)[4] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "To the extent that claims sound in fraud or misrepresentation, they 'must state with particularity the circumstances constituting the fraud.'" *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pacific LLC*, 945 F. Supp. 2d 543, 551 (D.N.J. 2013) (citing Fed. R. Civ. P. 9(b)).

---

[4] All references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

When analyzing a Rule 12(b)(6) motion to dismiss, the district court conducts a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must "tak[e] note of the elements a [pleader] must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must accept as true all of a pleader's well pleaded factual allegations and construe the complaint in the light most favorable to the pleader. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether the "facts alleged in the complaint are sufficient to show that the [pleader] has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

## III.   DISCUSSION

### A.   The Trust's Counterclaim

#### 1.   Count One: NJCFA Violations

Symetra asserts that the Trust's NJCFA claim "is based on misrepresentations or omissions in modifying" the Policies. (Symetra's Trust Moving Br. 10, ECF No. 61-2.) According to Symetra, however, any modification or waiver related to the Policies "must be made in writing, and signed by the President, Secretary, Vice President, or Assistant Secretary[ of Symetra]." (*Id.* at 10–11.) Because the Trust's Counterclaim fails to allege any such writing, Symetra argues that the Trust has failed to allege any modification of the Policies. (*Id.* at 12.) As such, Symetra contends that the Policies' requirement that "all persons proposed for insurance [be] living and

9

insurable as set forth in this application at the time the policy is delivered" remained in full effect. (*Id.*) Symetra appears to argue that this procedure, therefore, was the parties' only means to modify the Policies, and the Trust cannot now assert that Symetra made any misrepresentations or engaged in deceptive behavior when it declined to enforce the Supplement waiver. (*Id.* at 11 (citing *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 515 (D.N.J. 2009)).) The Court rejects Symetra's convoluted and awkward argument that, notably, relies upon the factual allegations of its own Amended Complaint. (*See* Symetra's Trust Moving Br. 12.) The Court notes that, when considering a Rule 12(b)(6) motion, it considers the plausibility of *the pleader's allegations*, *not the movant's*.

Here, the Court finds that the Trust has sufficiently alleged a claim under the NJCFA. To state such a claim, one "must allege sufficient facts to demonstrate: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Georgia-Pacific*, 945 F. Supp. 2d at 558 (citing *Int'l Union of Operating Eng'rs Loc. No. 68 Welfare Fund v. Merck & Co.*, 929 A.2d 1076, 1086 (N.J. 2007)). Furthermore, Rule 9(b) "does not require specificity just for specificity's sake." *Id.* (quoting *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 104 (D.N.J. 2011)). Rather, "the pleadings must state what the misrepresentation was, what was purchased, when the conduct complained of occurred, by whom the misrepresentation was made, and how the conduct led [the Trust] to sustain an ascertainable loss." *Id.* (citation omitted).

The Trust's Counterclaim sufficiently alleges that in August 2016, Symetra officials assured Krivulka and the Trust that the Supplement waiver was appropriate, and that no other information was required to finalize the Policies. (Tr. Countercl. 39–40, ¶¶ 64–68.) The Trust then relied upon these assurances and paid the Policies' premiums, only to be denied coverage upon Krivulka's death. (*Id.* at 40, ¶ 69, 49–51 ¶¶ 109, 114.) The Court, therefore, finds that the Trust

has alleged a claim under the NJCFA and, accordingly, denies Symetra's Motion to Dismiss Count One of the Trust's Counterclaim.[5]

### 2.  Counts Two and Three: Common Law Fraud and Negligent Misrepresentation

Symetra also argues that because "the Trust has available remedies in contract, it is barred from seeking relief in tort, and consequently, its second and third counterclaims alleging common law fraud and negligent misrepresentation should be dismissed." (Symetra's Trust Moving Br. 17; *id.* at 13–17.) The Trust maintains that Counts Two and Three "do not seek to recover the benefits under the [P]olicies based on fraudulent performance of the contract, as the Trust's contract claims do." (Tr.'s Opp'n Br. 19, ECF No. 70.) "They are, rather, based upon a fraudulent or negligent misrepresentation made by Symetra officers *before the policies were approved and issued by Symetra, and therefore, before the contractual relationship existed*." (*Id.* (emphasis added).)

"Generally, the economic loss doctrine prohibits plaintiffs from recovering in tort economic losses to which they are entitled only by contract." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 308 (D.N.J. 2009) (citing *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 276 (N.J. 2002)). "[F]raud claims not extrinsic to underlying contract claims[, therefore,] are not maintainable as separate causes of action." *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 144 (3d Cir. 2001).[6] "For instance, a plaintiff may be permitted to proceed with tort claims sounding in fraud in the inducement so long as the underlying allegations involve misrepresentations

---

[5] Symetra also argues that Count One should be dismissed because the Trust "does not allege any substantial aggravating factor beyond the breach of contract." (Symetra's Trust Moving Br. 13.) Having found the Trust has adequately alleged a misrepresentation, the Court will deny Symetra's Motion to Dismiss Count One on this ground. *See Belmont Condo. Ass'n, Inc. v. Geibel*, 74 A.3d 10, 27 (N.J. Super. Ct. App. Div. 2013) ("A plaintiff [in an NJCFA action] need not demonstrate 'aggravating factors' when the 'unlawful practice' is an affirmative misrepresentation.").

[6] *Abrogated on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Emp'rs*, 571 U.S. 177 (2014).

unrelated to the performance of the contract, but rather precede the actual commencement of the agreement." *Arcand*, 673 F. Supp. 2d at 308.

There is a fraud in the inducement exception to the economic loss doctrine:

> District Courts in this Circuit have interpreted [relevant caselaw] as requiring the conclusion that where the fraud alleged is contained within the four corners of the contract, that is, where it concerns the nonfulfillment of a warranty or a guarantee contained in the contract, the plaintiff is prohibited from pursuing a separate tort claim; but, where the fraud is extrinsic to the contract, that is, where it more closely resembles a "fraud in the inducement" claim, then the plaintiff is not prohibited from pursuing simultaneous tort and contract claims.

*Lithuanian Com. Corp. v. Sara Lee Hosiery*, 219 F. Supp. 2d 600, 607 (D.N.J. 2002). For example, in *Wilhelm Reuss GmbH & Co. KG, Lebensmittel Werk v. East Coast Warehouse & Distribution Corp.*, No. 16-4370, 2018 WL 3122332, at *5 (D.N.J. June 26, 2018), the court held that the exception applied where the plaintiff agreed to store its goods at defendant's warehouse based on the defendant's representations relating to the warehouse's insurance. The court noted that although "it is not clear whether a new contract was formed following this [storage] decision by [plaintiff], the [p]roposed [a]mended [c]omplaint clearly alleges that the misrepresentation occurred *before* [plaintiff's] decision to continue to work" and contract with defendant. *Id.* (emphasis added); *see also Bell Container Corp. v. Palagonia Bakery Co.*, No. 19-6545, 2019 WL 8105297, at *5 (D.N.J. Dec. 26, 2019) (plaintiff's fraud claim not barred by economic loss doctrine because the "alleged facts support[ed] the inference that [p]laintiff, after it had stopped deliveries to [d]efendants, agreed to additional deliveries because [d]efendants misrepresented that they were committed to gradually paying off their outstanding debt under the payment plan despite having no intention of doing so"); *Cudjoe v. Ventures Tr. 2013I-H-R by MCM Cap. Partners, LLP*, No. 18-10158, 2019 WL 949301, at *4 (D.N.J. Feb. 26, 2019) ("The economic loss doctrine also bars negligence claims for 'false promises to perform as contracted,' but it does not bar claims for

'misrepresentations made to induce a party into a contract.'" (quoting *Cioni v. Globe Specialty Metals, Inc.*, 618 F. App'x 42, 47 (3d Cir. 2015)); *G&F Graphic Servs., Inc. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583, 593 (D.N.J. 2014) (applying the exception where the complaint alleged defendant made misrepresentations about its products during contract negotiations, which supported a conclusion that the misrepresentation induced plaintiff to enter into the contract).

Here, the Trust argues the inducement exception applies to Counts Two and Three, asserting that "[h]ad the Trust known what Symetra now claims to be the truth—that the promised waiver would have no real force or effect and that it was made only to induce the Trust to purchase the [P]olicies—then the Trust would not have paid Symetra over a million dollars in premium[s]." (Tr.'s Opp'n Br. 19–20.) The Court agrees. The Counterclaim alleges that, relying on Symetra's August 9, 2016 Supplement waiver and believing that no further medical information or action was necessary, the Trust, on September 21, 2016, began paying premiums for the Policies. (Tr. Countercl. 39–40, ¶¶ 66, 69; *id.* at 51–52, ¶¶ 116–21.) The Court, therefore, finds that Counts Two and Three allege claims extrinsic to the parties' contracts and, accordingly, denies Symetra's Motion to Dismiss Counts Two and Three of the Trust's Counterclaim.

### 3. Count Four: Good Faith and Fair Dealing

Next, Symetra argues that Count Four should be dismissed because the Trust "did not raise this argument in opposition to Symetra's motion to amend." (Symetra's Trust Moving Br. 17.) Symetra further asserts that it "had a good faith basis for denying the [insurance] claims"—Krivulka's "misrepresentations and omissions in applying for" the Policies and the Trust's knowing failure to disclose Krivulka's changes in health. (*Id.* at 17–19.)

The Trust's failure to raise a good faith and fair dealing claim in its response to Symetra's Motion to Amend the original Complaint does not render Count Four, as Symetra argues, moot. As to the timing of the Trust's Counterclaim, Rule 15(a)(3) provides that, "[u]*nless the court*

13

*orders otherwise*, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within [fourteen] days after service of the amended pleading, whichever is later." (emphasis added). Here, on March 4, 2020, the Court granted the Trust an extension of time to answer the Amended Complaint until March 31, 2020. (ECF No. 41.) On March 24, 2020, in light of the ongoing COVID-19 pandemic, the Honorable Freda L. Wolfson, U.S.D.J., issued a standing order that "all filing and discovery deadlines in civil matters that currently fall between March 25, 2020 and April 30, 2020, are [extended] by forty-five days[.]" (*See* D.N.J. Standing Order 2020-04.) The Trust filed its Answer, Crossclaim, Counterclaim, and Third-Party Complaint on May 13, 2020 (ECF No. 47), within the standing order's extension window.

As to the scope and substance of the Trust's Counterclaim, the Court finds *Berrada v. Cohen*, No. 16-574, 2017 WL 6513954 (D.N.J. Dec. 20, 2017), *aff'd*, 2018 WL 1837916 (D.N.J. Apr. 17, 2018), instructive. There, defendants filed an answer to plaintiff's amended complaint that included new factual allegations and counterclaims. *Id.* at *1. After plaintiff "had taken the position that defendants could not file amended counterclaims without leave[,]" the court issued an order stating "leave is not required for a responsive pleading filed as of right. Accordingly, the '[a]nswer and [c]ounterclaims' to the [a]mended [c]omplaint . . . [were] properly filed without leave." *Id.* Denying reconsideration, the court noted that "plaintiff's new claims did not alter the scope of discovery significantly, nor would defendants' counterclaims[.]" *Id.* at *3; *see also Berrada*, 2018 WL 1837916 ("In other words, because the breadth of changes amongst the pleadings was commensurate, [d]efendants did not need leave of [c]ourt to amend their [c]ounterclaims."). Here, the Trust's Counterclaim added Counts One through Six to its original breach of contract claim. (*Compare* ECF No. 5, *with* ECF No. 47.) Each new count, like the original breach of contract count, relates to Symetra's denial of insurance benefits under the

Policies. (*See generally* Tr. Countercl. 49–56.) The Court, therefore, does not find that the Trust's Counterclaim alters the scope of discovery in any significant way and, accordingly, denies Symetra's Motion to Dismiss Count Four on this ground.

Finally, in support of Count Four's dismissal, Symetra states the following:

> As set forth in Symetra's original complaint, amended complaint, and motion to amend, the rescission and denial of the Trust's [insurance] claim . . . [was based upon Krivulka's] undisputed intentional or unintentional misrepresentations and omissions in applying for insurance and in failing to notify Symetra of his changes in health prior to the delivery of the . . . Policies and the payment of the first modal premium. As set forth in the [A]mended [C]omplaint and in support of Symetra's motion to amend the complaint, discovery revealed that the denial of the Trust's claim and the rescission were also founded on the Trust, through the Trustee, knowing and failing to disclose to Symetra [Krivulka's] changes in health at the time the Trustee paid the first modal premium.

(Symetra's Trust Moving Br. 18–19.) Symetra, therefore, relies wholly on the factual allegations of its own pleadings and motion. As stated previously, for the instant Motion to Dismiss, the Court is determining the plausibility of the Trust's, not Symetra's, claims. Furthermore, it is the Trust's factual allegations that are accepted as true. Symetra, therefore, fails to demonstrate that *the Trust's* Counterclaim does not plausibly allege a claim for breach of the implied covenant of good faith and fair dealing. The Court, accordingly, denies Symetra's Motion to Dismiss Count Four of the Trust's Counterclaim.

### 4.  Count Five: Good Faith and Fair Dealing in Litigation

The Trust also alleges that Symetra breached the duty of good faith and fair dealing by commencing the instant action "based on interpretations of the Policies that it knew were clearly contradicted by the medical waiver it had granted, and by the information contained in its underwriting file . . . relating to Krivulka's sarcoidosis." (Tr. Countercl. 55, ¶ 129.) The Trust maintains that Symetra also breached this duty by "conjur[ing] up a pretend[] dispute against

Trustee Lerner[] in an effort to intimidate the Trust into dropping its claim under the Policies," and by "unfairly attempt[ing] to manipulate the sworn testimony of third-party witnesses with the intent to mislead the Court and the parties to this litigation." (*Id.* at 55, ¶¶ 130–31.)

In opposition, Symetra argues that Count Five is barred by the litigation privilege, which "grants absolute privilege and immunity to statements or communications made by attorneys, parties, and their representatives in the course of judicial and quasi-judicial proceedings[.]" (Symetra's Trust Moving Br. 20–21 (citations omitted).) Symetra, however, fails to provide any legal authority demonstrating that (1) the filing of a complaint and commencement of an action constitutes a "communication" protected by the litigation privilege, or (2) the litigation privilege applies to claims alleging breach of the duty of good faith and fair dealing. (*See generally id.*; Symetra's Trust Reply Br. 2–4, ECF No. 83.) Moreover, both parties cite to *Riveredge Associates v. Metropolitan Life Insurance Co.*, 774 F. Supp. 897, 900 (D.N.J. 1991), in which the court held "that a cause of action for breach of the implied covenant of good faith and fair dealing can be maintained under New Jersey law based on allegations that a party has assert[ed] an interpretation [of the contract] contrary to [its] own understanding of the express terms of that contract." (internal quotation marks and citation omitted). Importantly, the *Riveredge* court held that the "issue of lack of good faith . . . cannot be resolved on a motion to dismiss for failure to state a claim." *Id.* at 901.

The Court finds, therefore, that Symetra has failed to demonstrate that the litigation privilege applies to Count Five. Furthermore, the Court finds that the Trust may allege a breach of the duty of good faith and fair dealing related to Symetra's commencement of the instant action

and that, at this stage of the litigation, dismissal of such a claim is inappropriate. Accordingly, the Court denies Symetra's Motion to Dismiss Count Five of the Trust's Counterclaim.[7]

### 5. Count Six: Abuse of Process

Count Six of the Trust's Counterclaim asserts abuse of process. According to the Trust, Symetra "has made an improper, illegal[,] and perverted use of the legal procedure" by: (1) "commencing this lawsuit in willful disregard of the medical waiver it had granted"; (2) "bringing an unsubstantiated claim against Trustee Lerner"; and (3) "seeking to manipulate sworn testimony from third[-]party witnesses[.]" (Tr. Countercl. 56, ¶¶ 133–34.) Symetra argues that the Trust fails to allege a "further act" in support of abuse of process and, therefore, Count Six should be dismissed. (Symetra's Trust Moving Br. 22–23.)

A party asserting abuse of process must demonstrate: "(1) an improper, illegal, and perverted us of the legal procedure, (2) an ulterior motive in initiating the legal process, and (3) some further act after the issuance of process representing the perversion of the legitimate use of the process." *Malibu Media, LLC v. Lee*, No. 12-3900, 2013 WL 2252650, at *5 (D.N.J. May 22, 2013) (citation omitted). "In other words, 'an abuse of process occurs when a prosecution is initiated legitimately [but] thereafter is used for a purpose other than that intended by the law." *Id.* (quoting *Mitchell v. Guzick*, 138 F. App'x 496, 502 (3d Cir. 2005)). Process, however, is narrowly defined and "does not apply broadly to all proceedings in a legal action." *Jewett v. IDT Corp.*, No. 04-1454, 2007 WL 2688932, at *7 (D.N.J. Sept. 11, 2007). "Rather, it is limited to certain products of litigation that a court issues, such as a summons, mandate, or writ used by a

---

[7] Symetra also argues that, because the Trust did not assert a breach of good faith and fair dealing in opposition to its original Complaint or Motion to Amend, the Trust cannot do so now. (Symetra's Trust Moving Br. 19–20.) For the reasons previously stated in this Memorandum Opinion, the Court rejects this argument.

court to compel the appearance of the defendant in a legal action or compliance with its orders." *Id.* (internal quotation marks and citation omitted).

First, the "filing [of] a complaint, regardless of a plaintiff's intentions, cannot by itself serve as the basis for an abuse of process claim[.]" *Meng v. Du*, No. 19-18118, 2020 WL 4593273, at *6 (D.N.J. Aug. 11, 2020) ("Defendant's abuse of process counterclaim . . . fails because [he] has not alleged that [p]laintiff took any further act representing a perversion of the legitimate use of process. In fact, [d]efendant has not alleged that [p]laintiff took any steps after filing the [c]omplaint to harass him into rescinding the purchase contract[.]"); *see also Zebrowski v. Wells Fargo Bank, N.A.*, 657 F. Supp. 2d 511, 516–19 (D.N.J. 2009) (dismissing abuse of process claim where defendant failed to allege any further acts aside from the commencement of a foreclosure action); *Hoffman v. Asseenontv.com, Inc.*, 962 A.2d 532, 541 (N.J. Super. Ct. App. Div. 2009) ("The tort of malicious abuse of process lies not for commencing an improper action, but for misusing or misapplying process after it is issued."). Accordingly, to the extent that the Count Six alleges abuse of process for Symetra's commencement of the instant action, the Court finds that the Trust has failed to state a claim. Second, even construing the Counterclaim in the light most favorable to the Trust, the Court cannot find that Symetra's alleged manipulation of sworn third-party testimony falls within the narrow definition of process that constitutes a sufficient "further act." *See Ruberton v. Gabage*, 654 A.2d 1002, 1005 (N.J. Super. Ct. App. Div. 1995) ("Process . . . refers to the abuse of procedural methods used by a court to acquire or exercise its jurisdiction over a person or over specific property." (internal quotation marks and citation omitted)).

Finally, "a perversion of an otherwise legitimate process exists only where the process is used to 'coerce or oppress' another party or the process is used in a manner *not contemplated by law*." *Avaya, Inc. v. Cisco Sys., Inc.*, No. 10-5881, 2012 WL 2065536, at *4 (D.N.J. June 7, 2012) (emphasis added) (citations omitted). "It is important to note that where a party carries out process

18

to its *authorized* conclusion, albeit with bad intentions, there is no valid claim for abuse of process." *Id.* (emphasis added) (citations omitted). On February 18, 2020, the Honorable Zahid N. Quraishi, U.S.M.J., held, following briefing by Symetra and the Trust, (ECF Nos. 25, 31, 35), that Symetra acted reasonably in waiting to bring its claim against Lerner and granted Symetra leave to file the instant Amended Complaint with Lerner as a party, (Feb. 18, 2020 Op. and Order 9, 13–14, ECF No. 36). Because, therefore, Symetra was authorized to include Lerner in the instant action, the Court cannot find that Symetra's filing of its claim against Lerner was a "perversion of the judicial process." Accordingly, the Court grants Symetra's Motion to Dismiss Count Six of the Trust's Counterclaim.

### B.    Kelley's Counterclaim

#### 1.    Count One: NJCFA Violations

Symetra first argues that Kelley is not a consumer under the NJCFA. (Symetra's Kelley Moving Br. 6–7, ECF No. 62-2.) The Court agrees. Although the NJCFA does not define "consumer," "[i]t is well[-]established that one must be a 'consumer' to have standing to sue under the statute." *Wilhelm*, 2018 WL 3122332, at *3 (citations omitted); *see also CDK Glob., LLC v. Tulley Auto. Grp., Inc.*, No. 15-3103, 2020 WL 5743072, at *15 (D.N.J. Sept. 25, 2020) ("If the business itself consumes or uses the goods and services, as opposed to . . . purchasing them for resale, designs, and franchises, the transaction may be covered by the NJCFA."); *Diamond Life Lighting MFG (HK) Ltd. v. Picasso Lighting, Inc.*, No. 10-161, 2010 WL 5186168, at *6 (D.N.J. Dec. 14, 2010) ("The traditional definition of a consumer [under the NJCFA] is one who uses (economic) goods, and *so diminishes or destroys their utilities*." (emphasis in original) (internal quotation marks and citation omitted)). Furthermore, the NJCFA "is not intended to cover every transaction that occurs in the marketplace, but, rather, its applicability is limited to consumer transactions which are defined both by the status of the parties and the nature of the transaction

19

itself." *Wilhelm*, 2018 WL 3122332, at *3 (quoting *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 514 (3d Cir. 2006)).

By Kelley's own admissions, he did not purchase the Policies. Rather, he was hired to procure the Policies for the Trust and Krivulka. (*See, e.g.*, Kelley Countercl. 32, ¶¶ 14–15; *see also id.* at 32, ¶ 12 ("The Sales Agreement, among other things, sets forth terms and conditions pursuant to which commissions are earned by and paid to Kelley . . . from Symetra in the event a *client of Kelley*['*s*] . . . *purchases* life insurance or other products from Symetra." (emphasis added)).) Here, the Court cannot find that Kelley has either alleged sufficient facts or supported his argument with sufficient caselaw from which the Court could determine that he was a consumer for purposes of the Policies or the NJCFA. *See, e.g.*, *World Express & Connection, Inc. v. Crocus Invs., LLC*, No. 15-8126, 2017 WL 4516465, at *5 (D.N.J. Oct. 10, 2017) ("The Court finds that [the third-party plaintiffs'] own allegations of their intent to resell the boats cannot qualify them as consumers under the NJCFA."). The Court, accordingly, grants Symetra's Motion to Dismiss Count One of Kelley's Counterclaim.

### 2. Counts Two through Four: Fraudulent and Negligent Misrepresentation and Promissory Estoppel

In a conclusory manner, Symetra asserts that Counts Two through Four of Kelley's Counterclaim sound in contract. (Symetra's Kelley Moving Br. 11–13, 15–17 (Kelley's "allegations mimic that of an action for breach of contract.").) Symetra, accordingly, argues that these counts must be dismissed because (1) Kelley does not have standing to assert a contract claim for the Policies, (*id.* at 11–13), and (2) the economic loss doctrine bars tort recovery for contract claims, (*id.* at 13–14, 15–17).

Symetra, however, appears to misinterpret Kelley's Counterclaim, as it does not allege breach of contract. (*See generally* Kelley Countercl.) Rather, Kelley asserts that Symetra represented to him that, after the Supplement waiver, no additional health information was required

to finalize the Policies. (*Id.* 43–44, 45, 47, ¶¶ 64, 71, 77.) Kelley alleges he then relied upon this information, informed Krivulka and the Trust of the same, and "took actions to secure and bind" the Policies. (*Id.*) Kelley contends that Symetra "did not waive, or never intended to honor its waiver of, the delivery requirements relating to [supplemental health information for] the Policies, and its representations to the contrary were made to persuade and induce" Kelley, "and in turn Krivulka/the Trust, to accept the Policies as offered by Symetra and pay the substantial premiums associated with purchasing them." (*Id.* at 43, 47 ¶¶ 63, 76; *see also id.* at 45, ¶¶ 68–69 (alternatively alleging that Symetra was negligent in its representations of the same).) Moreover, according to Kelley, Symetra made these representations and assurances "with the expectation that" Kelley "would rely on its promises respecting the waiver and that" Kelley "would so advise Krivulka/the Trust about Symetra's promises." (*Id.* at 43, 45–47, ¶¶ 62, 70, 75.) Finally, Kelley asserts he suffered damages from this reliance in the form of (1) a demand from Symetra for the return of $488,784.85 in commission payments,[8] (*id.* at 44–47, ¶¶ 65, 72, 79), and (2) the inability, at the time of the misrepresentations, to pursue other life insurance options for Krivulka and the Trust, (*id.* at 47, ¶ 77).

Although Counts Two through Four relate to both the Policies and Sales Agreement, the Court does not find that Kelley's Counterclaim, as Symetra contends, is breach of a contract action. (Symetra's Kelley Moving Br. 12, 17.) Symetra provides no legal authority for the proposition that a court may consider a counterclaim—with well-pled allegations of negligent and fraudulent misrepresentation and promissory estoppel—as a breach of contract action. (*See generally id.* at 11–17.) Moreover, Symetra's reference to *Worbetz v. Ward North America*, 54 F. App'x 526, 533 (3d Cir. 2002), for the proposition that Kelley may not allege negligent misrepresentation

---

[8] Kelley asserts the damages are "in the form of liability [to Symetra] in the amount of" the commissions. (Kelley's Opp'n Br. 36, ECF No. 72.)

based on a contract between two other parties is unpersuasive. (Symetra's Kelley Moving Br. 12–13.) In *Worbetz*, which dealt with an employment dispute at the summary judgment stage, the plaintiff alleged that, prior to his hiring, his employer represented that the company's contractual relationship with a third-party client was strong. 54 App'x at 529. The plaintiff asserted that he accepted the employer's employment offer based, in part, on this assurance, but later found out the company did not have a contract with the client. *Id.* The Third Circuit affirmed the summary judgment ruling in favor of the employer on the negligent misrepresentation claim, and noted the district court's warning that allowing the claim to proceed would "convert to tort all breach of contract claims alleging that one party gave incomplete information during the process of negotiating that contract." *Id.* at 532 (citation omitted). The Third Circuit subsequently held that the plaintiff had "not come forward with any authority that support[ed] his assertion that a cause of action for negligent misrepresentation may be based on a representation that a third[-]party contract [was] in place." *Id. Worbetz*, however, is inapposite to the case at hand. Here, unlike the plaintiff in *Worbetz*, Kelley does not allege Symetra induced him into any contract based on representations related to Krivulka, the Trust, or the Policies. Rather, Kelley asserts Symetra made representations to him regarding their own practices and policies, which Kelley then relayed to Krivulka and the Trust to his detriment.

The Court, accordingly, finds that Symetra has failed to meet its burden under Rule 12(b)(6) to demonstrate that Kelley has failed to plausibly allege a claim for negligent and

fraudulent misrepresentation and promissory estoppel. Symetra's Motion to Dismiss Counts Two

through Four of Kelley's Counterclaim, therefore, is denied.[9]

**IV.**     **CONCLUSION**

      For the reasons set forth above, Symetra's Motion to Dismiss Counts One through Six of

the Trust's Counterclaim is granted in part and denied in part, and its Motion to Dismiss Kelley's

Counterclaim is granted in part and denied in part. The Court will enter an Order to accompany

this Memorandum Opinion.

 

                                                        MICHAEL A. SHIPP
                                                         UNITED STATES DISTRICT JUDGE

---

[9] Symetra also reasserts its convoluted argument that, because the Counterclaim does not allege any "waiver in writing, signed by an authorized executive[,]" the Counterclaim does not allege a modification of—and therefore a misrepresentation related to—the Policies. (Symetra's Kelley Moving Br. 15.) For the reasons previously stated in this Memorandum Opinion, the Court rejects this argument.